[No. 771.    February 28, 1899.]

JOHN W. SCHOFIELD, Receiver, et al., Plaintiffs in Error, v. TERRITORY OF NEW MEXICO ex rel. AMERICAN VALLEY COMPANY, Defendant in Error.

SYLLABUS BY THE COURT.

ATTACHMENT—PLEADING—WAIVER—DAMAGES—MITIGATION—LIVE STOCK —ASSIGNMENT OF ERROR—BILL OF EXCEPTIONS—REVIEW—VERDICT— SPECIAL FINDINGS — NEW TRIAL—STATUTES—REPEAL—PROCEDURE UNDER LEVY ACT, LAWS 1889, C. 54—REMITTITUR.—1. On trials in attachment suits, when a demurrer to a portion of the answer is sustained, and a part of the answer is stricken out and the defendants except, and answer over, omitting the objectionable paragraph, they save their right to have the ruling striking out such part of the answer reviewed on final appeal of the case.

2. In suits brought to recover for actual damages done by the attachment of live stock, after the writ of attachment has been traversed and dissolved, where exemplary damages are not claimed, the defendant can not prove, in mitigation of the actual damages sustained, that he had probable cause to believe the truth of the statements contained in the affidavit on which the writ of attachment issued.

3. Assignments that error was committed in admitting "illegal and improper testimony" and in "excluding the introduction of legal and proper evidence," are too general under rule XIV of the supreme court, for us to consider.

4. It is no error to allow evidence to go to the jury showing the condition and value of live stock at times other than the day of their release, as injuries may have been sustained by reason of the attachment which are not immediately apparent; nor is there any error in allowing evidence to go to the jury showing what cattle were worth when located on and familiar with a range.

5. In civil cases since the passage of the code of civil procedure in 1897, it is not necessary to have the instructions of the court, the decision of the judge granting or refusing them, or the motion for the new trial, incorporated in a bill of exceptions, when they are in the record this court can consider them.

6. The supreme court sits only to correct errors committed on the trial of the cause below and not to pass upon the specific amount of the award of the jury in determining the case.

7. Granting or refusing a motion for a new trial rests in the sound discretion of the court, and is not alone assignable as error.

8. The code of civil procedure, passed in 1897, does not repeal the statutory authority, providing that juries shall, when required, make special findings.

9. In order to proceed under the range levy act (Ch. 54, LL. 1889), in attaching cattle running at large on the range, it is necessary that some substantial number of cattle belonging to other owners be actually rounded up and gathered before the plaintiff can avail himself of said act.

10. A trial court has power to grant a new trial in the alternative, provided that the plaintiff does not remit a portion of the damages recovered by him.

*Error*, from a judgment for defendant, to the Fifth Judicial District Court, Socorro County.   Affirmed; Parker, J., dissenting.

The facts are stated in the opinion of the court.

CHILDERS & DOBSON for plaintiff in error.

The court erred in striking out the first paragraph of the answer of plaintiff in error.   Eames v. Kaiser, 142 U. S. 488; Sloan v. Loughert, 32 Pac. Rep. 1015; Stortz v. Finkelstein, 66 N. W. Rep. 1020.

The court permitted evidence to go to the jury of the value of the cattle other than the market value, and at a different time from that when the damage was sustained.   Coulson v. Bank, 54 Fed. Rep. 859; Bates v. Clark, 95 U. S. 209; Railroad Co. v. Estill, 147 U. S. 617.   See, also, upon measure of damages:   Pacific Ins. v. Conard, 1 Bald. 138, 18 Fed.

Cases; State ex rel. v. Smith, 31 Mo. 566; Hamer v. Hathaway, 33 Cal. 120; Cattle Co. v. Mann, 130 U. S. 69-79.

The writ of attachment for the levying of which this suit is brought, was sent to the sheriff by mail accompanied by a letter of instructions. Donald v. Carpenter, 27 S. W. Rep. 1053; Lindsey v. Cope, 44 Id. 276; Cope v. Lindsey, 43 Id. 29; Sparks v. McHugh. Id. 1045; Brown v. Hudson, 38 Id. 653; Gunter v. Cobb, 17 Id. 848. See, also, as to levy, 2 Freem. on Exec., sec. 260, and citations; Barr v. Canon, 69 Ia. 21.

It was purely a question of law as to whether the sheriff obeyed or disobeyed the written instructions given in levying the writ; and the court below erred in leaving the matter of construction to the jury. Levy v. Godsby, 3 Cranch 186; Bliven v. Screw Co., 23 How. 420; Russell v. Ely, 2 Black 575; Sweeney v. Easter, 1 Wall. 166; Walker v. Bank, 3 How. 62.

Under statutes like ours, if the judgment can not be sustained upon the special findings, it is the duty of the court to give judgment in accordance with the special findings, if it can be done; and if not, to set aside both the special findings and the general verdict and grant a new trial. It is also the duty of the court to grant a new trial where the special findings are contradictory and inconsistent with each other as to the material issue. Gwin v. Gwin, 46 Pac. 295, and citations; Ruse v. Corcoran, 52 Cal. 495; Lerned v. Castle, 21 Pac. Rep. 11. See, also, Sloss v. Allman, 30 Pac. Rep. 574; Lowenberg v. Rosenthal, 22 Id. 602; Dupont v. Storing, 42 Mich. 492.

Neill B. Field and F. W. Clancy for defendant in error.

After the demurrer was sustained by the court below the defendants pleaded over, omitting the objectionable paragraph, and thereby waived any right to object to the ruling of the court. Geiger v. Payne, 69 N. W. Rep. 554; Button v. Bank, 105 Cal. 1; Barrett v. Insurance Co., 68 N. W. Rep. 906; 6 Ency. Pl. and Prac. 359.

There was no error in sustaining this demurrer, the present action being for the recovery only of actual damages. Drake Att., sec. 173.

The denial of a motion for new trial may not be assigned as error in the courts of this territory. Buntz v. Lucero, 7 N. M. 220; Coleman v. Bell, 4 Id. 28; McClennan v. Pyeat, 50 Fed. Rep. 686; Lynch v. Grayson, 163 U. S. 468; Ayer v. Watson, 137 Id. 84; Land Co. v. Mann, 130 Id. 69; Howe v. Victoria Co., 160 Id. 303.

In the absence of any statute changing the rule the charge of the court below can not be reviewed, unless brought up by bill of exceptions. 3 Ency. Pl. and Pr. 440, and it does not help the case if the charge is actually copied into the record. Goldsburg v. May, 1 Litt. (Ky.) 254. See, also, as to what is properly a part of the record, 40 Am. and Eng. Ency. of Law, 475; Fisher v. Cockerell, 5 Pet. 254; Sargeant v. Bank, 12 How. 384; Vanderkarr v. State, 51 Ind. 95; Kirby v. Wood, 16 Me. 82; Storer v. White, 7 Mass. 448; Pierce v. Adams, 4 Id. 383; Sharp v. Daugney, 33 Cal. 12; Nichols v. Bridgeport, 27 Conn. 465; Newman v. State, 14 Wis. 430.

Where special findings can, on any reasonable hypothesis, be reconciled with the general verdict, the latter will control. Railroad v. Sumner, 30 N. E. Rep. 873; Lauderbach v. Rouch, 31 Id. 578; Railroad v. Insurance Co., 14 S. E. Rep. 237; Shafner v. Cover, 28 N. E. Rep. 871; Bloak v. Hazeltine, 29 Id. 937; Starrett v. Gault, 62 Ill. App. 209.

The court can not consider the question as to whether the damages allowed are excessive or not. Cattle Co. v. Mann, 130 U. S. 75.

MILLS, C. J.—This suit was brought on an attachment bond. The plaintiffs in error gave an attachment bond, in the statutory form, and sued out a writ of attachment against the American Valley Company. At the time of the delivery of the writ, the attorneys for Schofield wrote the sheriff of Socorro county, giving him instructions as to the course he was

to follow in levying it.    That part of the instructions which
is pertinent to this case, is as follows:

"I hereby instruct you to levy said writ of attachment in
the first mentioned case against the American Valley Com-
pany, upon all the real estate of said company, the title to
which stands of record in its name upon the record in the re-
corder's office of the county of Socorro, and also levy upon the
cattle and other personal property standing in the name of said
company by complying with the provisons of the act of the
legislative assembly for 1889, page 111, entitled an act relat-
ing to the service of writs of attachment and replevin or
executions on live stock.    You will take possession of some of
the stock belonging to said company and the balance which you
can not reasonably round up, you may levy upon by filing
with the clerk of the probate court a certified copy of said
writ in accordance with said act."

In executing the writ the sheriff levied upon the prop-
erty of the American Valley Company, and rounded up and
took into his actual possession during the latter part of March
and the first part of April, 1894, about one thousand head of
cattle, between sixty and seventy horses, four mules, and other
personal property.    These he held for some days, when acting
on orders of the attorneys for the plaintiff in error, he turned
the cattle loose on the range and surrendered possession of
the other live stock.    The affidavit on which the attachment
was based was traversed, and the issue thus raised came on
for trial, and the court instructed the jury to find the issues in
favor of the defendant, the American Valley Company. The
facts developed in that case appear in the decision given in
Schofield v. American Valley Company, which has already
been decided at this term of court.    After the dissolution of
the attachment, the American Valley Company brought this
action against Schofield, and the other sureties on the bond.
A trial was had in Socorro county in January of the present
year, and the jury found a verdict in favor of the American
Valley Company, and assessed damages in the sum of ten
thousand dollars.    Special findings requested by the defend-

ant were made by the jury.    The defendants below, plaintiffs
in error herein, filed a motion for a new trial, and the court on
March 24, 1898, granted said motion, conditionally, that the
American Valley Company did not remit three thousand dol-
lars of the damages awarded by the jury.    This sum the
American Valley Company did remit, and the motion for new
trial was overruled, and judgment entered for the sum of
seven thousand dollars.    From this judgment a writ of error
was sued out, and on the errors assigned the case is now before
us for review.

The assignment of errors alleges error:    (1)    That the
court erred in sustaining the demurrer of the plaintiff to the
answer of the defendants to the first paragraph of the de-
fendant's answer and striking out the same (2) that it erred
in admitting illegal and improper testimony over the excep-
tion and objection of plaintiffs in error, at the trial before the
jury; (3) that it erred in excluding the introduction of legal
and proper evidence offered by plaintiffs in error at said trial;
(4) that it erred in admitting as evidence testimony as to the
value of the cattle attached under the writ, other than the dif-
ference in the market value of said cattle at the time of the
attachment and the time of the release of the same; (5) that
it erred in admitting as evidence, testimony as to what the cat-
tle seized under the writ of attachment were worth to the de-
fendant in error, instead of limiting the issue to the market
value of the cattle at the time and place when and where they
were seized; (6) that it erred in admitting evidence of the
value of the cattle seized at times other than the date
when the cattle were seized and released by the plaintiffs in
said attachment suit; (7) that it erred in instructing the jury;
(8) that it erred in refusing to give the instructions asked by
the plaintiffs in error; (9) that the verdict was contrary to the
evidence; (10) that the verdict was contrary to the law; (11)
that the verdict was contrary to the law and the evidence;
(12) that it erred in refusing to sustain the motion for a new
trial; (13) that it erred in refusing to set aside the general ver-
dict and render a verdict in behalf of plaintiffs in error, upon

the special findings of the jury; (14) that it erred in overruling the motion for a new trial and in permitting the defendants to enter a remittitur in the sum of $3,000; (15) that the court should instead of permitting the entry of the remittitur for $3,000 have granted a new trial, and (16) that the court erred in permitting counsel for the defendants in error to quote from section 2 of the act relating to the serving of writs of attachment, replevin or execution on live stock, laws of 1889, and comment thereon.

The first point which presents itself under these assignments is as to whether or not the court erred in sustaining the demurrer of the plaintiff to the first paragraph of the answer of the defendant and in striking it out. This paragraph was:

ATTACHMENT: pleading: waiver.

"That the said attachment writ alleged to have been sued out by said declaration, was sued out by the plaintiff in said attachment suit, John W. Schofield, receiver of the Albuquerque National Bank, in a suit brought against the plaintiff, the American Valley Company, upon the ground that the defendant in said attachment suit was removing its property from the territory of New Mexico, and was sued out with probable cause or belief that such removal was for the purpose of evading the payment of the indebtedness due and owing from said defendant in said attachment suit to the plaintiff therein, in the sum of to wit: $17,580 which said indebtedness was past due and owing to the said plaintiff therein."

The demurrer of the defendant in error to this paragraph was that it "attempts to raise an issue which has already been disposed of in the case in which the writ of attachment was quashed, dissolved and dismissed, and which would be immaterial."

After argument, this demurrer was sustained, and the paragraph was stricken out, defendants below excepting, and leave was given Schofield to file an amended answer, leaving out said paragraph, which he did. The amended answer was likewise demurred to, but this demurrer was overruled.

Defendant in error contends that as, after demurrer was sustained, the defendants pleaded over, omitting the objectionable paragraph, they thereby waived any right to object to the ruling of the court, as they thereby abandoned their first answer, and substituted a different one, on which they went to trial. We do not consider this point as well taken. The defendants below, having excepted to the ruling of the court in sustaining the demurrer, saved their right to have such ruling passed upon, on final appeal of the case; by answering over they did not lose such right. This point was decided in the case of Teal v. Walker, 111 U. S. 242, where the court says: "When a demurrer to complaint for failure to state a cause of action is overruled, the defendant by answering does not lose his right to have the judgment on the verdict reviewed for error in overruling the demurrer." Having held that the right to have the alleged error of the court below in sustaining the demurrer and striking out the first paragraph of the answer reviewed, we will now consider whether or

DAMAGES: mitigation: live stock.

not such striking out was proper. This was not a suit brought to recover exemplary damages. The plaintiff only sought to recover the actual damages which it had sustained by reason of the loss resulting from the rounding up of its cattle and other live stock, during an inclement and unfavorable season of the year. In the trial of the traverse filed to the truth of the affidavit on which the attachment was based, the jury under instructions of the court, found for the defendant, which was equivalent to saying that the attachment had been improperly sued out, and that the plaintiffs had no proper grounds for attachment. It would not have mitigated the damages even if the paragraph stricken out had remained in the answer, and the defendant had proved its truth. The issue involved in this suit was as to what actual damage the plaintiff had sustained by reason of the illegal attachment which was vacated. It was not as to whether there was probable cause to believe that the American Valley Company, defendant in the attachment suit, was fraudulently removing its property from the territory of New Mexico. That

issue had already been decided in the negative. It had been
finally determined, and could not come up for readjudication
in the trial of this cause. At best, the paragraph stricken out
was mere surplusage, and if proved could not affect the merits
of this controversy. The cases cited in the briefs of the plain-
tiffs in error do not sustain their contention. They arose
where the plaintiffs sought to obtain exemplary and not actual
damages sustained by reason of an attachment, and the courts
held that in such cases the defendants should be allowed to
show that he did not act maliciously in suing out the attach-
ments, so as to prevent the recovery of exemplary damages.
There is no error in the sustaining of the demurrer and strik-
ing out of paragraph 1.

The second and third assignments are, we think, too gen-
eral for us to consider. They do not point out errors spe-
cifically but leave it for us to examine the entire testimony and
charge to the jury, and consider each and every
exception taken to any part of it. Rule 14 of
this court says: "Each error relied upon shall
be stated in a separate paragraph." It can not
be contended that these general assignments comply with this
rule, and this court therefore will not consider them, as they
are not well taken. (Pearce v. Strickler, heretofore decided
at this term of court.)

ASSIGNMENT of
error.

As the fourth, fifth and sixth assignments relate to the
measure of damages, we will consider them together. The
gist of these assignments is that the court had
only the right to allow evidence to go to the
jury showing the market value of the cattle
at the time the writ of attachment was served
and the cattle were taken under it, and their value when they
were released, and that error was made in allowing evidence
to be introduced showing what the cattle were worth to the
defendant in error and the value of the cattle at times other
than the date when they were seized and released in the attach-
ment suit.

LIVE stock: dam-
ages.

This contention of the plaintiffs in error is too narrow and if carried to its full extent it would work a hardship on the plaintiffs in this class of actions, where live stock is attached and taken into the actual possession of the officer, and suit is brought to recover for the damages actually done by such seizure. To limit a recovery which might be had to that which was apparent at the day when the live stock was released, which is the doctrine for which the plaintiffs in error contend, is not the law. Other injuries may have been sustained which are not at once apparent and which are only shown by the lapse of time. Thus in the case of New York, etc., R. R. Co. v. Estill, 147 U. S. 591, which is cited by the plaintiffs in error and which was a suit brought to recover for injuries sustained by cattle by reason of a collision in Ohio, the court allowed the plaintiff to prove what the value of the cattle would have been in Missouri if they had arrived there in good order and condition, and also allowed proof to go in, of the number of calves which the cows aborted by reason of the collision, and the value of the cows after such abortion. In that case, the court says, "It is further contended for the defendant that, if the proper measure of damages is the difference between the market value of the cattle in the condition in which they would have arrived, but for the negligence of the defendant, and the condition in which they did arrive, that the value must be fixed as of the time when the cattle first reached their destination, and the plaintiff could not show that subsequently some of the cattle died. It is further contended that two rules for the recovery by the plaintiffs were adopted, first, the difference between the two market values of all the cattle in the condition in which they arrived at the time, and, second, in addition thereto, the value of those which subsequently died.

"The market value of the cattle at their destination would depend upon their condition when they reached it. Proofs that the deaths subsequently resulted from injuries the cattle had received in the collision, would simply show their real condition when they reached their destination. It would not

establish any new injury or any additional damage. The plaintiffs were permitted to prove that some of the cattle had been so badly injured at the time of their delivery that they subsequently died from the effects of such injury, and, therefore, were of no value when delivered." Nor do we see any error in permitting evidence to go the jury as to what the cattle were worth when located on and familiar with a range. The driving on the range of the same number, kind and quality of new cattle as those which were rounded up and injured while held under the attachment, would not have reimbursed the defendant in error for the losses which it sustained, for such cattle would not have been accustomed to the range, and it would have cost much more to have cared for them until they were located on, and accustomed to the range, than to care for those already located there. Live stock located and running at large on the range, are very different from animals which are kept up, fed and cared for.

The seventh and eighth assignments are that the court committed error in instructions given the jury and in not giving those asked for by the plaintiff in error.

The instructions given by the judge below, in the order in which they appear in the transcript of record, are appended at the end of this decision and it will appear

BILL of exceptions: review.

from them that they are not inserted in the record in the order in which they must have been given to the jury, nor do they appear to have any proper ending. We doubt that they are copied in the transcript in extenso. We also give the instructions requested by the plaintiffs in error, which were refused.

The defendant in error contends that it is not necessary for us to pass on the instructions given or refused, as they are not properly before us, not being incorporated in and made a part of the bill of exceptions. This court held in the case of the Territory v. Chaves y Chaves, 50 Pac. 324, which was a criminal case, the decision of which involved the life of a human being, as follows:

"Fifty-six errors are assigned by the defendant relating to things done during the progress of the trial. We can not, however, pass upon these alleged errors, as there is no motion for a new trial in the bill of exceptions. It is a fundamental rule that such errors must be brought to the attention of the court below by a motion for a new trial, as an exception must be saved to the overruling of that motion, and the motion must be made matter of record by a bill of exceptions."

Neither the instructions nor the requests for instructions in this case, nor the motion for a new trial, are in the bill of exceptions. The last request for instructions (and the request comes after the instructions were given) ends on folio 157 of the transcript. The motion for the new trial in 158 to 169, while the bill of exceptions begins on folio 187 of the transcript. The plaintiffs in error contend that it is not necessary to embody the instructions and motion for the new trial in the bill of exceptions and cites sections 2996, 2997 and 2998, of the Compiled Laws of 1897, in support of such contention. These laws were, however, passed in 1880, long before the decision in the Chaves case, supra, and in deciding that case the court held that they did not apply in criminal cases, nor in our opinion do they apply in civil ones; but the plaintiffs in error also claim that under sub-section 172 of the Code of Civil Procedure, passed in 1897 (Ch. 78, Laws of 1897, section 2685, sub-section 172 Compiled Laws of 1897), it is not necessary to have the instructions, and the decisions of the court granting or refusing them and the motion for the new trial, incorporated in the bill of exceptions. Part of said sub-section is as follows: "In all actions the testimony taken by a referee, the transcribed notes of the stenographer, and all motions, orders or decisions made or entered in the progress of the trial of any action shall become and be a part of the record for the purpose of having the cause reviewed by the supreme court of the territory upon appeal or writ of error, and it will not be necessary to prepare or have settled, signed or sealed any bill of exceptions in order to make any such matters a part of the record in such action."

We think that this claim is well founded and that under the Code of Civil Procedure, now in force in this territory, it is not necessary in a civil case to have the instructions and the decision of the court granting or refusing them, and the motion for a new trial, incorporated in the bill of exceptions, but that when they are in the transcript this court can consider them.

Holding that the instructions given and refused are before us, we will now consider as to whether or not the court committed error in the instructions which were given or in those which were refused.

We have gone over them all as they appear in transcript very carefully, and think that the court gave the law as it is. The court in the charge pointed out correctly the several items of damage, and there is nothing to show that the jury made any error from not understanding the law or in applying the same to the facts presented to them for their consideration. Substantially all the law contained in the plaintiffs in error's requests, which it would have been proper for the judge to give are given in his charge. We see no error either in the charge given by the court to the jury, or in its refusal to give the instructions requested by the plaintiffs in error.

The ninth, tenth and eleventh assignments are that the verdict of the jury was contrary to the evidence, contrary to the law, and contrary to the law and evidence. This cause comes before us to have errors occurring at the trial below corrected, and not for us to pass on the exact amount of the verdict given by the jury in determining the case. The judge in the court below who presided at the trial and the jury who saw and noted the manner and actions of the several witnesses while they were on the witness stand, could do that far better than any appellate court can do from simply reading the evidence taken. An assignment that the verdict of the jury is against the law, can not be entertained. Brigham & Co. v. Retelsdorf, 73 Iowa, 712; Wood & Co. v. Hallowell et al., 68 Iowa, 377.

VERDICT: review.

These remarks apply also to the proposition as to whether the verdict was contrary to the evidence and to the law and the evidence.  As previously stated we do not consider the mere weight of evidence.  The jury and the trial judge do that and if the judge who presided at the trial had thought that the verdict was not a proper one, and one which was warranted by the evidence adduced, he undoubtedly would have set it aside and have granted a new trial himself, even if the plaintiffs in error had not made the motion for such new trial.  That he did not do so is strong cumulative evidence that he did not think the verdict, after remitter was made, unwarranted by the evidence adduced at the trial; in fact, his holding that he would grant the motion for the new trial, unless the defendant would remit the amount of the recovery so as to reduce the same to $7,000 is positive proof that he considered that a judgment of such sum was warranted by the evidence.

The twelfth assignment is that the court erred in refusing to sustain the motion for a new trial.  The granting or denial of such a motion rests in the sound discretion of the trial court and is not alone assignable as error in the courts of this territory or in those of the United States.  In Coleman v. Bell, 4 N. M. 28, the court says:

New trial.

"A motion for a new trial in the federal courts is a motion addressed to the discretion of the court, and the decision of the court, in granting or refusing it, alone, is not the proper subject of a bill of exceptions."

And again in the same case the court says: "The universal rule of practice is that matters resting entirely in discretion, are not re-examinable in the court of errors."

Numerous authorities are cited in this case in support of this proposition.  The same rule has been reaffirmed in Buntz v. Lucero, 7 N. M. 220, and we see no good reason to change it.

Assignment 13 is that the court erred in refusing to set aside the general verdict and to render a verdict for the plaintiffs in error upon the special findings made by the jury.

The right to require special findings by the jury in trials in the district courts was specially given by statute in this territory. Chapter 45, Laws of 1889, compiled as section 3993 of the Compiled Laws of 1897. The defendant in error claims that by the passage of the Code of Civil Procedure by the Legislature of 1897, the statutory authority provided for special findings is repealed. We can find no such repeal, and therefore hold that the statutes permitting juries to make special findings is still in force. Under the common law, also, the court had the right to require that juries give special findings in certain cases. By the statute of this territory if the special findings are inconsistent with the general verdict, "the former shall control the latter and the court shall give judgment accordingly."

SPECIAL findings: statutes: repeal.

The court has also the inherent power, if that can not be done, to set aside both special findings and general verdict, and order a new trial. Did these special findings conflict with the general verdict in such a manner as to require the court to set aside such general verdict and give judgment on the special findings, or to set aside both of them and order a new trial? In some of the states of the Union, it is required that in case of special requests to find, all of the cause shall thereby be submitted to the jury, but this is not the law in this territory.

The plaintiffs in error submitted to the jury eleven requests for special findings, and the jury have answered them all. These requests and the answers made by the jury are as follows, to wit:

"1.    How many cattle are shown to have died and been lost in consequence of the levy of said writ?    (200) Two hundred.

2.    What was the value of the cattle so lost per head at the time and place where they were seized under said writ? ($11) Eleven dollars per head.

3.    How many calves were lost to the plaintiff by reason of the levy of said writ of attachment, and what were the dam-

ages sustained on account of the calves so lost? (250) Two hundred and fifty.

4. . What was the difference in the market value of the cattle per head which were turned loose and redelivered to the plaintiff at the time they were levied upon and at the time they were so turned loose? ($1.50) One dollar and fifty cents per head.

5. Were the acts of the sheriff in rounding up, seizing and holding said cattle in the pasture or corral or close herding them authorized by the plaintiff in said attachment suit? Yes.

6. Did the sheriff take reasonable and proper care of the cattle so seized and held by him under said writ of attachment? Tolerably so.

7. If the sheriff did not take reasonable and proper care of the cattle so seized and held by him under said writ, were his wrongful acts with reference to said property, or his neglect to properly care for the same, known to the plaintiff or his attorney in said attachment suit? No.

8. Was it not impossible and impracticable for the sheriff. to round up, gather and take possession of one thousand head of cattle or the number he actually did round up and gather, without at the same time rounding up, and cutting out live stock belonging to other owners? Impossible.

9. Did the sheriff, in levying upon and taking into his possession of the number of cattle which he did, follow the instructions and directions given by plaintiff in said attachment suit or his attorney? Yes.

10. Did the sheriff and the men assisting him exercise due and reasonable care in the gathering and rounding up of said cattle for the purpose of holding under said writ of attachment? Tolerably so.

11. If they did not exercise due and reasonable care was their failure to do so known to or approved in any manner by the plaintiff or his attorney in said attachment suit? We think not."

The jury seem to us to have answered these questions fairly and impartially.    Indeed the plaintiffs in error do not seriously contend that any of their answers are incompatible with the general verdict, except the answer to request number 8.    The claim of the plaintiffs in error is that they furnished the sheriff with written instructions as to how he should proceed to levy the attachment.    (A copy of such part of the instructions as is pertinent to this case is inserted in the first portion of this opinion.)    What is known as the range levy act was passed in 1889, and is chapter 54 of the Session Laws of that year.    It consists of five sections, of which it is only necessary for us to quote the first:

PROCEDURE under "Levy act."

"Section 1.    Hereafter whenever it shall be necessary to levy any writ of attachment, replevin or execution under the laws of this territory upon any live stock or herd of cattle that are ranging at large with other live stock or cattle over any range country, and when it would be impossible or impracticable to round up, gather or take possession of the same under such process without at the same time rounding up and cutting out the live stock belonging to other owners, then and in such case, the sheriff or other officer holding such writ, shall only take possession of such stock as he may be able to get without interfering with the live stock of other owners, and as to the balance, it shall be sufficient in order to subject them to the lien of said writ, that the officer shall file with the clerk of the probate court of the county in which the brand of such live stock is recorded, a certified copy of said writ, and immediately upon the filing thereof the clerk of the court shall note the same in the reception book of his office, and shall also note the same in red ink on the margin of the page of the book where such brand is recorded and shall properly index the process in the general and other proper indices of his office; provided that if said livestock range is in more than one county, then the officer may file a like certified copy of the writ and brand in any such county and the same shall have like binding effect as a lien upon such live stock."

Plaintiffs in error contend that under the statute it was only necessary for the sheriff to round up a very few of the cattle, such number in fact as might have been rounded up without gathering cattle belonging to other owners, and that, if he rounded up any cattle other than those claimed in the writ of attachment, then he exceeded the authority conferred upon him by the written instructions and that the sheriff, and not the principals in the attachment suit, are liable for any damages which may have resulted.   The evidence shows that over a thousand head of cattle belonging to the American Valley Company were rounded up, and with them about fifty head of stock belonging to other owners were also gathered. Out of such number so rounded up, this is not a large proportion.   We have very grave doubts as to whether the legislature intended that, if only four or five head of cattle in the hundred belonging to other people were rounded up, when cattle were seized on attachment, this would do away with the actual seizure of the cattle levied on, and that such levy might be made by simply filing a paper in the office of the probate clerk. We are inclined to the belief that the legislature actually intended that it would be necessary to gather such number of stock belonging to other owners as would do them some substantial injury or damage, before the prohibition under the range levy act against gathering other cattle would apply. In addition to this the evidence nowhere discloses on what day of the round-up the fifty head of cattle belonging to other owners were gathered.   Nearly all of them may have been rounded up on the last day, and if such was the case it would not have justified the sheriff in releasing the cattle which he already had in his possession.   We can see nothing in the replies to the several requests which is in serious conflict with the general verdict, and are of the opinion that the court would have committed error had the general verdict been set aside on account of these special findings.

The fourteenth and fifteenth assignments we will consider as one.   They allege error in the alternative, because the

REMITTITUR.

court allowed the verdict of the jury to stand when the plaintiff below entered a remitter of $3,000 instead of granting a new trial. The right of the court to allow a verdict to stand when the plaintiff enters such a remitter as the court deems proper, and which in its opinion will fairly bring the amount of the judgment within the proof admits of no argument. In the case of Arkansas Cattle Co. v. Mann, 130 U. S. 69, which is a most instructive case, and where many authorities are cited, the court says:

"It can not be disputed that the court is within the limits when it sets aside the verdict of a jury and grants a new trial where the damages are palpably or outrageously excessive. Ducker v. Wood, 1 T. R. 277; Hewlett v. Crutchley, 5 Taunt. 277-281; authorities cited in Sedgw. on Damages [6 Ed.] 762, note 2. But, in considering whether a new trial should be granted upon that ground, the court necessarily determines in its own mind whether a verdict for the given amount would be liable to the objection that it was excessive. The authority of the court to determine whether the damages are excessive implies authority to determine when they are not of that character. To indicate, before passing upon the motion for the new trial, its opinion that the damages are excessive, and to require a plaintiff to submit to a new trial unless, by remitting a part of the verdict, he removes that objection, certainly does not deprive the defendant of any right, or give him any cause for complaint, notwithstanding such remission, it is still open to him to show in the court which tried the case, that the plaintiff was not entitled to a verdict in any sum, and to insist, either in that court, or in the appellate court, that such errors of law were committed as entitled him to have a new trial of the whole case."

This leaves only the sixteenth and last assignment for us to consider. This assignment is that the court committed error in allowing counsel for the defendant in error to quote from section 2 of the act relating to writs of attachment, etc. (Ch. 54 Laws '89), and comment thereon. This assignment

is misleading, as the record does not show that counsel commented on this section. What appears and all that appears in the transcript relating to this matter is the following:

"During the argument of the case on behalf of the plaintiff by Mr. Catron, counsel quotes from section 2 of the act relating to the serving of writs of attachment, replevin or execution on live stock, Laws of 1889, as follows: 'Upon the next round-up after such levy until such writ is satisfied, all persons coming into possession of any such live stock shall treat such officer as the owner thereof.' Defendant objects to counsel reading such act or any part thereof to the jury, which objection is by the court overruled, and defendant then and there excepts."

We are of course bound by the record as it appears. We can not go outside to ascertain what counsel said, if anything. No remarks or comments are in the record, so we must assume that none were made, and it can not with reason be contended that the mere reading of this section to the jury was reversible error.

We have considered all the assignments raised by the plaintiffs in error, and can find no substantial grounds for a reversal of the court below, and such judgment is therefore affirmed.

McFie, Crumpbacker, and Leland, JJ., concur; Parker, J., dissents.

INSTRUCTIONS GIVEN BY THE COURT, AS APPEARING FROM THE RECORD.

"You are instructed that while the defendants are not liable for damages which may have resulted to the horses from the use of them in rounding up the cattle, yet, if you find that in the rounding up of the horses and holding the same under said writ any of the horses died or were lost as a result of said rounding up and holding by said sheriff then the defendant would be liable for such horses so lost at the

reasonable value thereof per head at the time the same were so taken under said writ.

Gentlemen of the Jury:

This is a suit instituted by the plaintiff against the defendants to recover damages for the alleged wrongful suing out of the attachment.

You are instructed that the plaintiff is entitled to recover in this action only for the actual damages which he has sustained by reason of the levy and suing out of said writ of attachment in said cause, such damages as necessarily resulted from the suing out of the attachment damages resulting to the property by them, and the acts reasonably done by the sheriff in the execution of said writ with the reasonable expenses incurred in the defense of said attachment suit.

You are instructed that the defendants in this case are not liable in this action for any willful and abusive mistreatment of the said cattle so taken under said writ of attachment, if you should believe from the evidence said sheriff in rounding up and handling said cattle has been guilty of willful and abusive treatment of said cattle which resulted in the injury thereof, he would not be liable unless you further find from the evidence that said willful and abusive treatment of said cattle was done with the knowledge, consent or approval of the defendant Schofield or his attorney.

You are further instructed that the said sheriff was not authorized to use the horses and mules of the said plaintiff in rounding up said cattle.

Neither was the said sheriff authorized to kill and use any of the meat from the cattle for the purpose of feeding and supplying the men whom he had in charge of said cattle, and was not authorized to take and use any of the hay for the horses and mules except such as were necessary to feed and care for the horses and mules which the said sheriff took under said writ. That the said sheriff would be authorized to use the said hay and grain to feed and take care of the said horses upon which he had made said levy, and the defendants would be liable therefor; but if the said sheriff and his posse used and rode said horses, and any damage or loss resulted to said horses

from such use, then the defendant herein would not be liable therefor.

You are instructed that the plaintiff is entitled to recover in this action to the amount of reasonable attorney's fees paid or contracted to be paid by it in the defense of said issue upon the trial of said attachment proceedings, and not any general attorney's fees for the defense of said suit upon its merits.

You are further instructed that the writ of attachment placed in the hands of the sheriff commanding him to levy upon and attach so much of the goods and chattels of the said plaintiff as were sufficient to satisfy the amount mentioned in said attachment writ of about $17,000, and the said sheriff was authorized to do such acts and things as were necessary to make a valid levy upon said property. It appears in evidence that at the time said attachment writ was so delivered to said sheriff the attorney of the defendant Schofield gave to said sheriff certain instructions in reference to said levy, as follows, to wit:

"I hereby instruct you to levy said writ of attachment in the first mentioned case (that is, the case of Schofield against the American Valley Company) upon all the real estate of said company the title to which stands of record in its name upon the records of the recorder's office of the county of Socorro, and also levy upon the cattle and other personal property standing in the name of said company by complying with the provision of the Act of the Legislative Assembly for 1889, page 111, entitled An Act relating to the service of writs of attachment and replevin in execution on live stock. You will take possession of some of the stock belonging to said company and the balance you can not reasonably round up you may levy upon by filing with the clerk of the probate court a certified copy of said writ in accordance with the said Act."

Under the law referred to in these instructions the sheriff under said writ had a right to take possession of such stock and cattle upon the range as it was practicable for him to get hold of without interfering with the stock of other persons. Under this writ and under the instructions which were given

the sheriff was authorized and directed to attach and take into his possession such of the property and cattle of the defendants in said writ as were reasonable and necessary to satisfy the writ, and he was authorized and directed under said writ and was authorized by the instructions to round up and take into his possession a portion of the cattle belonging to said company, and could take possession of such portion of said cattle as he could by the exercise of reasonable diligence round up; and if you believe from the evidence that the said sheriff, acting under said writ of attachment, and under said instructions, did go upon the range of the said company, and did round up and take possession of nine hundred or one thousand head of the cattle of the said plaintiff, and that in rounding up said cattle and in taking possession of the said cattle he exercised reasonable care, and that if while said cattle were so in his possession he exercised reasonable care in looking after and caring for the same, and if you further find from the evidence that by the acts of said sheriff in so rounding up, taking possession of and holding the said cattle in the manner stated that the same were damaged or any of them lost to the said plaintiff by reason thereof then the defendant would be liable in this action for the damages resulting from such rounding up, handling and holding of the said cattle. If any of said cattle died as a result thereof the measure of damages would be the reasonable value of such of said cattle as died, the value thereof to be fixed at the time and place and circumstances under which they were taken. If said cattle, or any of them, were injured as a result of rounding up and holding the same by said sheriff, then as to such as were so injured the measure of damages therefor would be the difference between the value of said cattle so damaged or injured at the time and place and under the circumstances which they were taken and the value thereof at the time they were returned to the plaintiff.

INSTRUCTIONS ASKED BY THE PLAINTIFFS IN ERROR, AND REFUSED
BY THE COURT, AS APPEARS FROM THE RECORD.

"1.   The court instructs the jury that the plaintiff is not
entitled to recover for any damages which may have been
sustained by it by reason of the levy of the said writ of attach-
ment, on account of the levying of which this suit is brought,
except for actual damages it so sustained, and that the meas-
ure of the actual damages sustained, if any, on account of the
injury of the property levied upon is the difference between
the market value of the property at the time the writ was
levied and the value of the property at the time it was released
and returned to the plaintiff.

"2.   The court instructs the jury that if they believe from
the evidence that the defendant Schofield, through his at-
torney, instructed the sheriff to make a range levy upon the
cattle and other live stock of the plaintiff, and the sheriff
after having received the said writ and the said instructions,
proceeded to round up and hold in pasture, corral or by close
herding, a large number of cattle, to wit, some nine hundred
or one thousand head, and took and used the horses and mules
of the plaintiff in so doing, then the defendants are not liable
in this action for damages, if any, for the said unauthorized
action of the sheriff.

"3.   The jury is further instructed that the defendants
are not liable in this action for the acts of the sheriff in failing
to take proper care of the property seized and levied upon by
him under the writ of attachment then in his hands, unless
they believe from the evidence that his failure to take proper
care, and his willful acts, mistreatment or abuse of the prop-
erty held by him was done with the knowledge, approval and
consent of the said defendant Schofield, or his attorney.

"4.   The jury are instructed that the defendants in this
action are only responsible for such acts as the writ placed
in the hands of the sheriff command him to do, unless they
further believe from a preponderance of the evidence that the
unreasonable acts claimed to have been done by said sheriff,

or his deputies, were done under the instructions or with the knowledge and consent or approval of the plaintiff in said attachment suit, or his attorney; and they are further instructed that said sheriff was not authorized in said writ to seize the horses and mules of the plaintiff, levied upon for the purpose of rounding up the cattle of the said plaintiff under said writ, and that he was not authorized to kill and use the meat of any of said cattle, or take or use any hay or any other supplies for the men engaged in rounding up said cattle and mules used in so doing.

"5. The jury are further instructed that the defendants in this action are not liable for the horses killed, or the using of the hay, or other supplies which said sheriff may have appropriated or used while engaged in serving said writ or levying upon said cattle.

"6. The court further instructs the jury that the defendants are not liable in this action for any moneys expended by the plaintiff in payment for the attendance or mileage of witnesses upon the trial of the issue of the affidavit of attachment in said attachment suit, and that the law fixes the amount of the compensation of witnesses for mileage and attendance upon the court, and the plaintiff was entitled to recover and did recover for such expenses incurred as a part of the judgment rendered in said attachment suit.

"7. The jury are further instructed that the plaintiff is not entitled to recover as a part of its damages for the wrongful suing of said attachment, attorney's fees contracted or paid subsequent to the release of the levy upon the property of said plaintiff and the return of the same to it.

"8. The jury are further instructed that while the plaintiff may be entitled to recover reasonable attorney's fees actually paid or contracted to be paid, in and about the defense of said attachment suit, still it is not entitled to recover except so much of the attorney's fees as the jury may believe from the evidence were paid or contracted to be paid for the defense of the issues upon the affidavit of attachment, and they should not take into consideration the amount of any retainer or any

fee contracted to be paid, or any portion of any fee or retainer which was paid, or contracted to be paid, for the defense of the plaintiff against the indebtedness it was sued for in said attachment suit.

"9  The jury are instructed that the writ of attachment placed in the hands of the sheriff commanding him to levy upon and attach so much of the goods and chattels of said plaintiff as was sufficient to satisfy the amount of —— dollars claimed in said writ, authorizing him to do only such acts as were necessary to make a valid levy upon such property in the absence of special instructions from the plaintiff in said attachment suit, and the defendant would only be liable for such as were necessary and proper, and it was the duty of the sheriff, while the property was so attached and while in his possession, to take reasonable care of the same, in view of the kind and character of the property so attached, and that he was not authorized to round up and close herd the cattle and other live stock of the plaintiff in any such manner as would injure them, and if the said sheriff did so round up and hold said property in such manner as to cause the same to be injured and depreciated in value, said defendants are not liable in this action for any such damage.

"The court further instructs the jury that if said sheriff or his deputies and the persons assisting him did not use due and proper care in handling, rounding up and holding said cattle under said writ of attachment, if any losses or damages did accrue to said cattle on account of the manner of handling them or the failure to use due and proper care in handling, rounding up and holding said cattle, then the defendants would not be liable for such failure, unless the same was done under the direction and approval, knowledge and consent of the plaintiff in said attachment suit.

"The jury are further instructed that in this form of action it is not sufficient for the plaintiff to show that the attachment was dissolved in order to authorize him to recover attorney's fees paid or contracted to be paid for services in securing the dissolution of the attachment, it is also necessary in such case

that the evidence should show that the plaintiff in the attachment suit had no reasonable cause for suing out the same.

"The jury are further instructed that in this action the defendants are not liable for attorney's fees for securing the release of said cattle, which he levied upon and released, and of which the defendant in said attachment suit was not deprived of the possession at the time of the employment of his attorney and the payment of attorney's fees, and that the value of the services should be estimated upon the basis of the value of the property which was released from actual seizure and possession of the sheriff, under the attachment writ in consequence and as a result of the attorney's employment.

"The jury are further instructed that in this form of action it is not sufficient for the plaintiff to show that the attachment was dissolved in order to authorize him to recover attorney's fees paid or contracted to be paid for services in securing the dissolution of the attachment, it is also necessary in such case that the evidence should show that the plaintiff in the attachment suit had no reasonable cause for suing out the same.

"The jury are further instructed that in this action the defendants are not liable for attorney's fees for securing the release of said cattle, which he levied upon and released, and of which the defendant in said attachment suit was not deprived of the possession at the time of the employment of his attorney and the payment of attorney's fees, and that the value of the services should be estimated upon the basis of the value of the property which was released from actual seizure and possession of the sheriff under the attachment writ in consequence and as the result of the attorney's employment.

"The jury are instructed that there is evidence in this case tending to show that the plaintiff in the attachment suit instructed and directed the sheriff to levy said writ of attachment upon the cattle of the defendant company under and in accordance with the act of the legislative assembly of 1889, known as the range levy act, and not to round up more cattle than was reasonble in order to comply with said act.

"The court instructs you that said act provides that a levy may be made upon cattle and live stock upon a range by gathering, rounding up and taking into possession as many cattle as it is possible and practicable to round up and take possession of without interfering with the cattle of other owners. And you are instructed that if you believe from the evidence that the sheriff in rounding up necessarily interfered with and gathered and rounded up cattle belonging to other owners than the defendants in said attachment suit, which it was necessary to cut out, then said act or acts of said sheriff were in violation of the defendant in this suit, and the defendants in this suit are not liable for any damages or injuries which may have been suffered by the defendant in said attachment suit by reason of the seizure and holding of any cattle in excess of the number which the sheriff should or could have rounded up and under the said instructions and said act of the legislative assembly as above explained.

"The court instructs the jury that the writ of attachment which was placed in the hands of the sheriff and for the levy of which this suit is brought, commanded the sheriff to levy upon and seize sufficient property of the defendant named in the writ to satisfy the amount thereof, that the law required the sheriff in accordance with the command of said writ to exercise reasonable care and diligence in seizing, levying and holding and taking care of any property levied upon under the same. That it was the duty of the sheriff in executing the same to use reasonable care and diligence in the seizure and holding of the property attached by him as by law might be necessary in order to fix upon said property a valid lien in favor of the attaching auditor.

"The jury are further instructed that the law authorizes a levy upon cattle and live stock by gathering up and taking possession of so many cattle that it is possible and practicable to gather and take possession of without gathering or taking possession of or cutting out any cattle belonging to other owners than the defendant in the attachment writ.

"And if you believe from the evidence that the sheriff under said writ rounded up and gathered and held possession of more cattle than could have been gathered and rounded up without including therein cattle belonging to other owners, than the defendants in said attachment suit rounding up and holding was not the exercise of proper and reasonable care in the execution of said writ, and the defendants are not liable for any damages and injury suffered by the defendant in said attachment writ in consequence of said acts."

### SYLLABUS BY THE COURT.