512 P.2d 1267

Erma TOBECK, Plaintiff-Appellant,

v.

UNITED NUCLEAR–HOMESTAKE PARTNERS, and Harry M. Gonzales, Defendants-Appellees.

No. 998.

Court of Appeals of New Mexico.

June 27, 1973.

Rehearing Denied July 19. 1973.

James T. Roach, Albuquerque, for plaintiff-appellant.

John P. Salazar, Stuart S. Keown, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for defendants-appellees.

## OPINION

HERNANDEZ, Judge.

This action arose out of a collision between a private automobile driven by the plaintiff and a tractor-trailer owned by the corporate defendant, United Nuclear-Homestake Partners, and driven by individual defendant Gonzales, an employee of United Nuclear. The accident occurred on November 21, 1969 at approximately 9:30 p. m. on State Road 56. Both vehicles were traveling in the same direction on a two-lane highway with plaintiff's car some distance ahead of the tractor-trailer. The rear of plaintiff's car was struck by the truck when plaintiff attempted to make a left-hand turn across the oncoming lane of traffic and the truck attempted to pass the automobile. The jury returned a verdict for defendants.

█ Plaintiff brings this appeal and asserts five separate points of error. We discuss each of these points below in the order and in the form raised by the plaintiff keeping in mind that we neither weigh the evidence nor determine the credibility of the witnesses, Platero v. Jones, 83 N.M. 261, 490 P.2d 1234 (Ct.App.1971), and all reasonable inferences are drawn in favor of the verdict, Svejcara v. Whitman, 82 N.M. 739, 487 P.2d 167 (Ct.App.1971).

Plaintiff's Point One:

(1) "THE COURT ERRED IN ALLOWING TESTIMONY FROM THE POLICE OFFICER AS TO THE POINT OF IMPACT."

█ State Police Officer Garcia investigated the accident and was called as a witness by the plaintiff. On direct examination he testified that the tractor-trailer had left 132 feet of straight, uninterrupted skid marks in the left or passing lane of the highway. Near the end of this single set of skid marks, he observed a gouge mark in the asphalt. From the gouge mark north (the direction in which both vehicles were traveling) he saw two sets of skid marks. He traced one set of skid marks to the rear end of the tractor-trailer and the other set to plaintiff's vehicle. Part of Officer Garcia's testimony on direct examination is as follows:

> "Q. Now Officer, from the Largo Ranch Road, did you measure to the tail end of the tractor-trailer?
>
> "A. Yes, I did.
>
> "Q. And what was that distance?
>
> "A. Well, from the point that I put down as the *approximately point of impact* to the rear of the trailer is 176 feet." [Emphasis ours]

Later, again as part of the direct examination, Officer Garcia was asked:

> "Q. . . . Officer Garcia, you have indicated that there was at least 132 feet of skid marks from the truck-trailer rig prior to any *possible point of impact;* is that correct? [Emphasis ours]
>
> "A. Yes sir."

On cross-examination, over plaintiff's objection, Officer Garcia testified as follows:

> "Q. . . . Officer, did you make any attempt to determine the point of impact of the subject vehicles?
>
> "A. Yes, I did.
>
> "Q. And upon what did you base your conclusions as to where the point of impact was?
>
> . . . . . .
>
> "A. I base it in the approximate vicinity of the uninterrupted skid marks.
>
> . . . . . .
>
> "Q. . . . Now, you indicated that it is your conclusion that the point of impact occurred at the north end of the uninterrupted skid marks?
>
> "A. Yes sir, in the vicinity of the interruption there."

The plaintiff objects to the admission of the officer's testimony on cross-examination as to the point of impact on the ground that he was not properly qualified as an expert, and therefore his opinion as to the point of impact should not have been admitted. We need not reach this contention to dispose of this assignment of error. The estimation of the point of impact was part of the taking of the various measurements. As the excerpt from the transcript indicates, the witness initially gave his opinion as to the point of impact in the course of his direct testimony, testimony elicited by the plaintiff.

Regardless of whether the testimony as to point of impact was erroneous, plaintiff cannot complain of this testimony. Plaintiff injected the question into the case on direct examination of the officer; defendant cross-examined as to the question raised by plaintiff. State v. Borrego, 52 N.M. 202, 195 P.2d 622 (1948); compare Hale v. Furr's Incorporated, 85 N.M. 246, 511 P.2d 572 (Ct.App.1973). It was not error to permit the police officer to answer the question as to point of impact on cross-examination.

Plaintiff's Point Two:

(2) "THE COURT ERRED IN ALLOWING HEARSAY TESTIMONY OF THE POLICE OFFICER THAT THE PLAINTIFF MADE AN IMPROPER TURN AND FURTHER ERRED IN REFUSING TO STRIKE THE TESTIMONY."

The Police Officer testified that he had visited the plaintiff, Mrs. Tobeck, in the hospital the day after the accident. He stated that the reason for this visit was to find out "her side of the story" and to get "information for my accident report." When asked the question, by defendant's counsel, "Did you indicate anything to her as to whether or not you felt she had made an improper turn or—", plaintiff objected. In objecting, the plaintiff stated:

". . . I think that was improper and should be stricken. It would be improp-

er to say what this officer said about it . . . . we object to the foundation. He didn't set any kind of foundation for that and just left it hanging at that."

Thus, while plaintiff on this appeal attempts to base his claim of error on the premise that the officer's statement was hearsay and thereby inadmissible, his objection to the statement at trial went to the question's foundation. It has long been the rule in this state that general objections asserting that any given testimony is incompetent, irrelevant or immaterial or that no proper foundation has been laid are not sufficient to sustain a specific objection raised on appeal. Henderson v. Dreyfus, 26 N.M. 541, 191 P. 442 (1919); State v. Gray, 79 N.M. 424, 444 P.2d 609 (Ct. App.1968). The plaintiff's objection that the question lacked "foundation" in no way apprised the trial court of the specific objection, now sought to be made, that the statement was hearsay. An objection not sufficiently specific to call to the trial court's attention the specific reason for the matter's inadmissibility will be treated on appeal as if no objection had been made. Williams v. Vandenhoven, 82 N.M. 352, 482 P.2d 55 (1971); Ash v. H. G. Reiter Co., 78 N.M. 194, 429 P.2d 653 (1967). This claim of error was not properly raised below and, accordingly, must be denied here.

Plaintiff's Point Three:

(3) "THE COURT ERRED IN ITS FAILURE TO GIVE NEW MEXICO JURY INSTRUCTION 15.4."

Certain of plaintiff's proposed jury instructions were requested only by reference to a number given the instruction in the New Mexico Uniform Jury Instructions. Included in this list and requested by number only was U.J.I. 15.4 which reads in part as follows:

"A witness may be discredited or impeached by contradictory evidence or inconsistent conduct [or by evidence that at other times the witness has made material statements, under oath or other-

wise, which are inconsistent with the present testimony of the witness] [or by evidence that the witness has been convicted of a crime] [or by evidence that the general reputation of a witness for truth, honesty, or integrity is bad] [or by specific acts of wrongdoings of the witness]."

The directions for the use of this instruction point out that the instruction "*if properly used and adapted* with the material in brackets will cover all instructions on the point of impeachment. . . ." [Emphasis ours] The pre-trial order signed by both parties in this case provided, in part, that counsel might submit jury instructions by reference to U.J.I. numbers "unless the instruction requires some tailoring or alteration, in which case the complete instruction will be submitted."

Assuming, but not deciding, that there was evidence in the case which warranted an impeachment instruction, we nevertheless conclude that the trial court's refusal to give the instruction was not error. Without alteration to conform to the specific facts adduced by the testimony at trial, the instruction was confusing and misleading. Even v. Martinez, 75 N.M. 132, 401 P.2d 310 (1965). The plaintiff asserts that both defendant Gonzales and one of the experts, Mr. Pipkin, were impeached by "contradictory evidence." Plaintiff further asserts that "the contradictory evidence and prior inconsistent statements are sufficient for the impeachment instruction. * * *" However, instruction number 15.4 submitted by plaintiff in unaltered form deals with other types of impeachment as well, such as impeachment by evidence of general reputation of a witness, conviction of a crime, etc. While there may have been some evidence of contradiction or inconsistent statements, a thorough examination of the record shows no impeachment by conviction of crime or by evidence of reputation. To have given the requested instruction, which included impeachment methods for which there was no evidentiary support, would have introduced false issues and

would have misled the jury. LaBarge v. Stewart, 84 N.M. 222, 501 P.2d 666 (Ct. App.1972).

■ We agree with plaintiff that the Uniform Jury Instructions are to be given when justified by the facts, and the refusal to give such instructions when accompanied by the slightest prejudice to a party is reversible error. Jewell v. Seidenberg, 82 N.M. 120, 477 P.2d 296 (1970). Here, however, all the elements in the requested instruction were not justified by the facts. It was not error to refuse the requested instruction.

Plaintiff's Point Four:

(4) "THE TRIAL COURT ERRED IN ALLOWING A. O. PIPKIN TO TESTIFY WHEN HE WAS NOT LISTED IN THE PRE-TRIAL ORDER."

■ The pre-trial order in this case required, in part, that "The names of other witnesses not disclosed will be exchanged by the parties at least thirty days prior to trial date." Contrary to this provision, the plaintiff was notified on November 5, 1971 that the defendants intended to call Mr. A. O. Pipkin as an expert witness. The trial began on November 22, 1971. Plaintiff contends that this deviation from the terms of the pre-trial order constitutes reversible error. We do not agree.

The rule in point, § 21–1–1(16), N.M.S. A.1953 (Repl.Vol. 4), provides that as part of a pre-trial conference (which is discretionary) "the court shall make an order which recites the action taken at the conference . . . and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice."

Plaintiff cites the case of Johnson v. Citizens Casualty Co., 63 N.M. 460, 321 P.2d 640 (1958), for the proposition that the trial court should have prevented Mr. Pipkin from testifying. However, in Johnson the pre-trial order requiring plaintiffs to make an election of damages issued by one trial judge was adopted as the law of the case

by a second trial judge to whom the case had been transferred. In Johnson plaintiff waited until the time of trial to object to the required election as to the damage issue, never sought to modify the order and never claimed that the required election was unjust. We do not consider Johnson applicable to our facts. Here, defendants added the name of an additional expert witness, and notified plaintiff of this witness 17 days prior to trial. In permitting the witness to testify, the trial court pointed out that the expert was using the same data as other experts and that plaintiffs were not handicapped by the addition of this witness.

Since there is no New Mexico case directly in point we look to the nature of pleading under the federal rules (upon which the New Mexico rules of civil procedure are based) and the place of the Rule 16 pre-trial order within the overall scheme of civil procedure. The purpose of the federal rules of civil procedure was to get away from a "sporting" theory of justice and to minimize the often fatal technicalities of common law pleading. We believe the pre-trial conference and the resulting pre-trial order must be examined in this light. In Clark v. Pennsylvania R. R., 328 F.2d 591 (2d Cir. 1964), the court pointed out that:

> "[I]t is a fundamental principle of pre-trial that this procedure be flexible, with power reserved to the trial judge to amend the order or permit a departure from strict adherence to the pre-trial statements of either party, when the interests of justice make such a course desirable. Otherwise a pre-trial order or pre-trial statements would hold the parties in a vise, and the result might be just about as bad as a return to the old sporting theory of justice. . . ."

The court went on to hold that such deviation may be reviewed for an abuse of discretion.

We conclude that the trial court may permit a departure from the strict terms of the pre-trial order insofar as names of witnesses are concerned at its discretion. In the instant case there was an addition of a single expert witness and a lapse of 17 days (a substantial period) between the notification of the defendants and the date set for trial. It appears from the record that neither the issues developed at trial nor the theory of the case was affected by this modification of the pre-trial order. There was no abuse of discretion by the trial court's permitting this deviation from the terms of the pre-trial order.

Plaintiff's Point Five:

(5) "THE TRIAL COURT ERRED IN ALLOWING EXPERT TESTIMONY CONCERNING TESTS THAT WERE NOT SUBSTANTIALLY SIMILAR TO THE CONDITIONS OF THE ACCIDENT AND OF ALLOWING EXPERT RECONSTRUCTION TESTIMONY WHICH INVADED THE PROVINCE OF THE JURY AND LACKED PROPER FOUNDATION."

The record discloses that tests were conducted at the site of the accident by. Mr. A. O. Pipkin to establish the coefficient of friction using a tractor-trailer of a different manufacture from the tractor-trailer involved in the accident. The principal differences were that the test vehicle was one thousand pounds lighter and that since the tests were conducted just before trial the roadway surface was two years older.

(a) *The similarity of conditions.*

■■ As a general proposition, the admission of expert testimony is within the discretion of the trial court and will not be upset on review except upon a clear showing of abuse of discretion. Scott v. McWood Corporation, 82 N.M. 776, 487 P.2d 478 (1971). Moreover, the New Mexico Supreme Court has repeatedly held that when evidence of tests or experiments are introduced under circumstances such as those in this case, the conditions under which the experiments or tests have been conducted do not have to be identical with

the conditions existing at the time of the accident but of a substantial similarity. Scott v. McWood, supra; State v. Rose, 79 N.M. 277, 442 P.2d 589 (1968), cert. denied, 393 U.S. 1028, 89 S.Ct. 626, 21 L.Ed.2d 571 (1969); Hodgkins v. Christopher, 58 N.M. 637, 274 P.2d 153 (1954).

■ Mr. Pipkin's uncontradicted testimony was that the differences between the vehicle used in the test and the vehicle involved in the accident and the two-year aging of the roadway had no meaningful effect on the results of the experiments, and that the differences would not materially alter the results reached with the test vehicle. There is additional testimony in the record that the roadway was not significantly changed from the date of the accident. Test conditions do not have to be identical with the conditions existing at the time of the accident but must be merely substantially similar. The uncontradicted testimony of the expert witness here shows that the conditions were substantially similar.

Plaintiff has not shown any abuse of discretion on the part of the trial court in admitting the experimental evidence.

(b) *The invasion of the province of the jury.*

■ Plaintiff contends that Mr. Pipkin should not have been allowed to testify because:

" . . . even an expert witness should not be allowed to testify as to the cause and effect of the accident and completely reconstruct the accident when the jury can reconstruct the accident from the facts as placed in evidence and the testimony in evidence."

The testimony provided by Mr. Pipkin went to the speed of the vehicles and the point of impact. It involved, for example, a complicated discussion of a term used in accident analysis known as the "coefficient of friction"—a mathematical computation used to determine vehicle speeds by an analysis of the road surface and the types of vehicles involved in the collision. This evidence was not an improper invasion of the jury's province since his testimony involved the interpretation of facts which are not matters of common knowledge. Mr. Pipkin's testimony was admissible on the basis that it would aid the jury in understanding the facts underlying the collision. Crouch v. Most, 78 N.M. 406, 432 P.2d 250 (1967); Lopez v. Heesen, 69 N.M. 206, 365 P.2d 448 (1961). See also, Lewis v. Knott, 75 N.M. 422, 405 P.2d 662 (1965).

(c) *The foundation of the expert's testimony.*

■ Plaintiff argues that the testimony of Mr. Pipkin lacked proper foundation. We do not agree. Mr. Pipkin testified as to the results of his experiments, and to his personal knowledge of the handling characteristics of vehicles similar to, and the same as the tractor-trailer involved in this accident. He observed photographs of the scene of the accident and the vehicles involved. The measurements taken by Officer Garcia had already been admitted. We conclude that the testimony had a proper foundation. Cf. Hanberry v. Fitzgerald, 72 N.M. 383, 384 P.2d 256 (1963).

The judgment is affirmed.

It is so ordered.

WOOD, C. J., and HENDLEY, J., concur.