## COOKE–TEAGUE MOTOR CO. v. JOHNSON.
### No. 12678.

Court of Civil Appeals of Texas. Fort Worth.
May 7, 1932.

D. A. Frank, of Dallas, for appellant.

McLean, Scott & Sayers, Wm. P. McLean, Jr., and Glover C. Johnson, all of Fort Worth, for appellee.

CONNER, C. J.

This is an appeal from a judgment in the sum of $1,000 in favor of appellee, Tom Johnson, against the Northside Chevrolet Company, a subsidiary of the appellant, Cooke-Teague Motor Company, for damages suffered by Johnson in a collision with a truck driven by an employee of the motor company. The plant of the motor company is located at the intersection of North Main street and Twenty-Third street in North Fort Worth. The building faces north on Twenty-Third street; its west side faces on North Main street. Some 20 or more feet from the northeast corner of the building on Twenty-Third street is a door into which and out of which trucks and automobiles of the company are propelled as occasion requires. At the time of the accident, an automobile was parked at the curb, some 20 feet west of the door mentioned. S. E. Castleberry, an employee of the Trentman Building Company, on his way to a destination on Twenty-Third street east of the building mentioned, was driving on North Main street after having picked up several laborers, including the appellee, Johnson, and, when arriving at the junction of North Main and Twenty-Third streets, he turned the corner east and proceeded along Twenty-Third street, when, as he was passing the door mentioned, a one-ton Ford truck, operated by Victor Roberts, an employee of appellant company, backed out and collided with the lower limbs of appellee, Johnson, who had been riding on the Trentman truck on the right-hand side thereof with his feet hanging down. There was evidence in behalf of appellee that the company truck, without the sound of a horn or other warning, came out of the door of the shop suddenly at a speed of 15 or 20 miles an hour, and that the back end of the truck had encroached on the street so as to strike the Trentman truck at about the point where appellee was riding. The evidence in behalf of defendant on this point, however, was to the effect that the truck was driven out of the shop at a rate of speed of 6 or 8 miles an hour only, and that, as the driver passed the door, he looked and saw the Trentman truck coming some 100 or 120 feet from the west; that he immediately stopped his car with the hind wheels of his truck in the gutter, the projection of the truck platform extending into the street some 2 to 4 feet; that the driver of the Trentman truck veered to his left to pass the parked automobile, and then turned somewhat to the right so as to sideswipe the back end of the Trentman company truck.

The pleadings of the litigating parties, generally speaking, are indicated by the special issues upon which the case was tried before a jury.

Upon the conclusion of the testimony, the court, after defining the terms "negligence," "ordinary care," and "proximate cause," submitted special issues, in answer to which,

among other things, the jury found that Roberts, the driver of the company truck, was negligent in not sounding a horn or giving other warning before backing the defendant's automobile into the street; that he was not using ordinary care to keep a lookout for automobiles approaching from the west; that he was negligent in backing defendant's truck into the street on the occasion of the accident at the rate of speed .it was being operated, and that he was negligent in backing defendant's truck "into the street on the occasion in question under the circumstances the jury might believe the evidence shows to have existed at that time." The jury found that each of the several acts indicated was a proximate cause of the accident to the plaintiff.

The jury further found that the accident did not happen without any negligence on the part of either Roberts or Tom Johnson; that the injuries complained of by the plaintiff had been received by being struck by defendant's truck; that the plaintiff, Johnson, was not negligent in sitting on the truck at the place and in the manner he did; that the driver of the Trentman truck was not negligent in driving his truck in the manner he did; that the plaintiff, Johnson, at the time of and just prior to the accident, kept such a lookout as a person of ordinary care and prudence would have kept under the same or similar circumstances for automobiles approaching from the west; that the damages to plaintiff proximately caused by the collision was $1,000, and judgment in his favor for that amount was entered. From this judgment defendant has duly prosecuted this appeal.

Appellant in some 26 propositions, based upon assignments of error, subjects the proceedings in this case to a searching analysis, but our disposition of the appeal must necessarily be much more brief.

 Among other assignments of error, several are directed to argument of counsel for appellee to the jury, one of whom in his argument stated as follows: "If this foot, every time he puts it on the ground, is hurt and gives him pain, as he says it does, and he cannot do that kind of work, and all he can do is to get yard work from house to house * * * if you believe that, gentlemen of the jury, that all he is making now is around eight or ten dollars a week * * and I say to you that Tom is telling the truth when he testified about the facts. Tom has not been asking anybody to look after him."

Another one of appellee's counsel in argument made the following statement: ·

"When you were selected as jurors in this case you were asked the question as to whether you would give that negro boy—and he is a negro boy—a fair and impartial hearing. You stated that you would and I believed you then, and I believe you now. In fact, I am of the opinion that by virtue of him being a negro you will probably lean a little bit towards his side of the case. * * *

"You were inquired of as to whether or not you knew anything about negroes. I think I know negroes pretty well. I have been around them all my life. I had one that was my nurse when I was a baby. My wife is from Louisiana and she has a negro girl with her. I believe I am about as well acquainted with negroes as any young man my age in Fort Worth. I tell you one thing, gentlemen of the jury, about a negro, and you reflect upon what I am about to say. Consider whether or not I am telling you the truth. Whenever you get a negro to come into the courthouse before a judge and twelve jurors and testify to a lie, you have got a negro that I don't know anything about."

The arguments quoted were duly objected to in behalf of defendant as improper, and do not appear to be justified by the record or by statements made by defendant's counsel. The objections were overruled, and proper bills of exception duly preserved are now before us.

In the case of Hewitt v. Buchanan (Tex. Civ. App.) 4 S.W.(2d) 169, 178, the court said: "It has been repeatedly held to be reversible error for counsel to parade before the jury the poverty of his client and seek to win a verdict by arousing the sympathy and appealing to the compassion of those whose decisions will determine the controverted issues of fact."

In the case of Floyd v. Fidelity Union Cas. Co. (Tex. Com. App.) 24 S.W.(2d) 363, the court said: "Arguments must be confined to the evidence which is admitted."

It has been held improper to refer to the fact that one of the witnesses was a Jew. Motley v. Lawrence (Tex. Civ. App.) 283 S. W. 699, 701. Or to refer to one of the parties as a "Jew, Christ-Killer, a murderer of our Savior." Freeman v. Dempsey, 41 Ill. App. 554. Or call defendant that "sweet-scented apple blossom from Russia." Trachtenberg v. Castello (Tex. Civ. App.) 257 S. W. 657. And even to refer to plaintiffs as "Germans." Busse v. White (Mo. App.) 259 S. W. 458. Or to refer to a "deliberate scheme to swindle and defraud gotten up by a Jew, a Dutchman and a lawyer." Moss v. Sanger Bros., 75 Tex. 321, 12 S. W. 619.

In the case of Brown Cracker & Candy Co. v. Castle (Tex. Civ. App.) 26 S.W.(2d) 435, 439, there was a reversal because the attorney said to the jury: "I think he wants to be honest with you men. I think he wanted to tell you the truth about this thing." The court said of this argument: "The matter complained of was not argument, but testimony unsworn, and inadmissible if offered in the due course of the trial." See, also,

Texas & N. O. Ry. Co. v. Harrington, 44 Tex. Civ. App. 386, 98 S. W. 653; Floyd v. Fidelity Union Cas. Co. (Tex. Com. App.) 24 S.W.(2d) 363; Hewitt v. Buchanan (Tex. Civ. App.) 4 S.W.(2d) 169, 178.

The court submitted the issue of contributory negligence on appellee's part, and the extent at least of appellee's injury is earnestly controverted; it being here insisted under an assignment of error that the verdict of $1,000 is excessive. The argument objected to we think in material parts is in the nature of testimony on the part of counsel, and calculated to excite sympathy for plaintiff. It is as objectionable to create a bias in the minds of the jurors in favor of a litigant as to create a prejudice against him, and we have concluded that the assignments of error directed to the argument quoted must be sustained, and the judgment below reversed and the cause remanded upon this ground.

The evidence upon a new trial may not be the same as upon the last, and hence numerous assignments need not be discussed. We will, however, briefly notice a few of the questions that may be pertinent. Objection was made in a general way to the failure of the court to properly define numerous terms in his charge. The specific objections, however, carried forward in appellant's proposition, are, a failure to define the terms "continuous and unbroken sequence" and "new and independent cause." In the court's definition of "proximate cause," the terms "continuous and unbroken sequence" were used but not defined, but there was an entire omission to define "new and independent cause." In view of the evidence that may be said to tend to show that the sole proximate cause of the injury to the plaintiff, as appellant insists, was negligence on the part of the driver of the Trentman truck in swerving to the right, we deem it advisable to suggest that the terms stated in the specific objections to the charge should be defined. This is especially true, in view of appellant's specially requested issues submitting the defense that the negligence of the Trentman company's driver was a new and independent cause of plaintiff's injury. Contrary to appellee's contention, the objections are available to appellee, notwithstanding a failure in his behalf to request special charges embodying the proper definitions. See Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570; Montrief & Montrief v. Bragg (Tex. Com. App.) 2 S.W.(2d) 276; St. L., S. F. & T. Ry. Co. v. Green (Tex. Com. App.) 37 S.W.(2d) 123.

Special issue No. 7 reads: "Was Roberts (the driver of appellant's truck) negligent in backing the defendant's truck into the street on the occasion in question under the cir-cumstances as you may believe the evidence shows to have existed at that time?"

It may be observed that the charge assumes that Roberts backed the truck "into the street." It is undisputed that he backed the car at least partly onto the street, but the ultimate issue would seem to be whether he backed it upon the street a distance which would impede, or probably impede, the progress of passing cars, and negligence vel non in doing this, if he did, is to be determined "by the circumstances" admitted in evidence and were alleged in plaintiff's petition, and not as may have been determined by undeclared circumstances attending the collision. In other words, the use of the term "circumstances" would seem to be too broad and to authorize the jury to consider circumstances not alleged.

We deem it unnecessary to refer to and discuss propositions presenting other questions, and conclude that, because of the objectionable argument of counsel quoted, the judgment below should be reversed and the cause remanded for another trial not inconsistent with this opinion.