546 P.2d 1202

**Elmer A. HERRERA, Plaintiff-Appellee,**

**v.**

**SPRINGER CORPORATION, Defendant-Appellant,**

**v.**

**WESTINGHOUSE AIR BRAKE COMPANY, Third-Party Defendant and Appellee.**

**No. 1888.**

Court of Appeals of New Mexico.

Feb. 3, 1976.

Certiorari Denied March 2, 1976.

**46**

Michael P. Watkins, Oldaker & Oldaker, Albuquerque, for defendant-appellant.

Tibo J. Chavez, John W. Pope, Cowper, Bailey & Pope, Belen, for plaintiff-appellee.

Charles B. Larrabee, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for third-party defendant and appellee.

## OPINION

LOPEZ, Judge.

This case involves a suit by Elmer Herrera, who was injured when the self-loading scraper which he was operating overturned. The plaintiff sued the dealer, Springer Corporation (hereinafter Springer), who had sold the scraper to the plaintiff's employer, Earth Resources. Springer in turn filed a third-party complaint against the manufacturer, Westinghouse Air Brake Company (hereinafter referred to as WABCO), for indemnification or contribution.

The case was tried to a jury, which returned a verdict of $175,000.00 for the plaintiff. The jury found in WABCO's favor on the issue of liability between Springer and WABCO. After the verdict Springer filed a motion for a new trial, or alternatively, a remittitur. This motion was denied and the appeal to this Court followed. We affirm.

WABCO manufactured the scraper in Toccoa, Georgia. The scraper was shipped to Albuquerque by railroad on a flatbed car. Upon arrival it was the duty of Springer to prepare the scraper for use by its customer. Among these duties was the obligation to torque certain wheel bolts to 1100 foot pounds of pressure. The certificate of delivery was marked to show that this torquing was accomplished, but in fact Springer's employees did not torque the bolts upon arrival. The wheel bolts were also supposed to be torqued after ten hours of operation. When the loader was received by the plaintiff's employer more than ten hours were shown on the meter. The bolts had not been torqued, nor did Spring-

er instruct Earth Resources at the time of delivery that they needed torquing. At trial Springer's counsel advanced the explanation that the ten hour requirement referred to hours of actual operation, and that in fact part of the time shown on the meter was time that the machine had spent just warming up. Within a few hours after the machine had been received by Earth Resources the accident occurred. The plaintiff presented evidence that the cause of the accident was the breaking and stripping of the bolts on the left front wheel. The bolts were shown to have broken because they had not been sufficiently torqued.

### Hearsay Evidence

Springer's first two points of error relate to the admission of testimony which they allege to be hearsay, and the admission of an expert opinion which was based on hearsay.

The expert, Mr. Kinsinger, was a metallurgist who was employed by WABCO. He had examined six of the bolts from the scraper and, based on their condition, was able to testify as to the cause of the bolts shearing and stripping. His testimony, as given in a deposition, was that the bolts were damaged by the weight of the machine, that the damage resulted from energy being passed to the bolts by the turning of the axle, and that the bolts were subject to these forces because they had not been adequately torqued.

During the course of his deposition, Springer's counsel asked Mr. Kinsinger about the condition of the head of the bolts. He testified that the paint on the head of the bolts was bright and shiny, and that torquing the bolts would have left a mark on the head. However, when pressed to give an opinion whether the bolts had *ever* been torqued, Mr. Kinsinger explained, in essence, that he was unable to give an opinion. He said that the cause of his inability to state such an opinion was information he had gained from the quality control person at the manufacturing plant. This person had told him that the bolts

were torqued at the factory, painted, torqued before shipment, and then repainted if necessary. Mr. Kinsinger had not investigated how many layers of paint were on the head. Thus, from looking at the head, he could not tell whether the paint was applied after the final torquing by WABCO before shipment, or whether WABCO had failed to perform this operation.

Springer argues that they were prejudiced by the admission at trial of Mr. Kinsinger's deposition testimony about the procedures followed at the factory. Springer wanted to limit Mr. Kinsinger's testimony to a statement that the bolts showed no evidence of torquing and had planned to use this statement to persuade the jury that WABCO had failed in its own duty to torque the bolts. No other evidence was presented by Springer to show that WABCO had failed to torque the bolts. The prejudice to Springer is said to have resulted when the jury was permitted to learn that the absence of marks on the paint was not conclusive proof that WABCO had not torqued the bolts, since they might have been torqued by WABCO and then repainted.

New Mexico has adopted a rule of evidence dealing with the problem presented by this evidence. Rule 703 of the New Mexico Rules of Evidence reads as follows:

> "*Rule 703. Bases of Opinion Testimony by Experts*
>
> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

Section 20–4–703, N.M.S.A.1953 (Repl. Vol. 4, Supp.1973).

This case was filed in 1971, so this evidentiary rule is not directly applicable to this case.

New Mexico had decided no cases dealing with this exact issue prior to the adoption of this Rule. Doctors, another class of expert witnesses, were allowed previously to testify as to statements made to them by patients. N.M.U.J.I. 15.2; *Alvillar v. Hatfield*, 82 N.M. 565, 484 P.2d 1275 (Ct.App.1971); *Waldroop v. Driver-Miller Plumbing & Heating Corp.*, 61 N.M. 412, 301 P.2d 521 (1956). Another principle derived from prior case law which has application here is that the basis of an expert opinion is required to be made known before the expert opinion is admissible: "[a]n expert witness must be able to give a satisfactory explanation as to how he arrives at his opinion." (Citations omitted). *Galvan v. City of Albuquerque*, 85 N.M. 42, 508 P.2d 1339 (Ct.App.1973).

The rationale behind allowing doctors to testify as to what statements were made by the person whom they were examining is that such subjective statements necessarily form a part of the diagnosis which the doctor presents. *Waldroop v. Driver-Miller Plumbing & Heating Corp.*, supra. Courts have been unwilling to exclude from consideration that information upon which the expert himself relies. *Birdsell v. United States*, 346 F.2d 775 (5th Cir. 1965). See, *Jenkins v. United States*, 113 U.S.App.D.C. 300, 307 F.2d 637 (1962); *Sundquist v. Madison Rys. Co.*, 197 Wis. 83, 221 N.W. 392 (1928). Other jurisdictions, in advance of the adoption of Rule 703, have allowed other types of experts to rely on hearsay evidence. *United States v. Aluminum Co. of America*, 35 F.Supp. 820 (S.D.N.Y.1940); *Standard Oil Company of California v. Moore*, 251 F.2d 188, 222 (9th Cir. 1957). See, 3 Weinstein's Evidence ¶ 703 [02] (1975).

In the circumstances of this case, we do not agree that reversible error was committed by admitting the hearsay evidence of factory procedures. The expert did not adopt the hearsay evidence as a necessarily true statement of what occurred at the factory: that is, he did not

give the opinion that WABCO had torqued the bolts. Mr. Kinsinger specifically disclaimed any personal knowledge of what occurred at the factory. He did not change his ultimate opinion that to all appearances the bolts had not been torqued. His reliance on the hearsay evidence came only when he was asked to accede to a statement which his investigations made him reluctant to adopt: that the bolts had never been torqued. In this particular context, the expert's recital of his basis for refusing to make a conclusion which he did not feel was justified was not reversible error.

### Springer's Expert Witness

Springer's third point of error concerns the trial court's refusal to permit Springer to present an expert witness.

Springer's case against WABCO was commenced in July of 1973. A pre-trial conference was held on October 8, 1974. At that time the parties had before them a report prepared by Mr. Kinsinger. During the conference WABCO announced that it was not definite that they would call Mr. Kinsinger. The plaintiff and Springer then expressed an interest in deposing him and arrangements were made to do so. The pre-trial conference concluded with the trial judge imposing a ten day limit on advising opposing counsel of expert witnesses to be called.

The deposition was taken on October 18, eleven days before the trial. During the deposition, counsel for Springer questioned Mr. Kinsinger about a statement that he had made in his test report that "[l]ooking at the *point* on the heads of these bolts, there is little evidence that a wrench was ever used on them. Thus, it becomes a question of whether these bolts were properly torqued at the factory and also if they were checked for being tight before delivery." (Emphasis supplied). Mr. Kinsinger said that "point" was supposed to have been "paint", and that the mistake was a typographical error. The hearsay evidence about the procedures at the factory then

emerged. Springer, cognizant of the limitations inherent in its relying on Mr. Kinsinger to support its case against WABCO, commenced a search for an expert of its own. Opposing counsel was notified four or five days before trial that an expert, Mr. Martin, had been located. Just before the start of the trial, the plaintiff's counsel produced another bolt which he stated was from the scraper involved in the accident. This bolt was given to Mr. Martin. During the course of the trial, Springer asked for, and was refused, permission to call Mr. Martin for its case against WABCO. Springer's counsel made a proffer of Mr. Martin's testimony. He stated that Mr. Martin would have testified that only one coat of paint was found on a bolt removed from another WABCO scraper. He also would have testified that the bolt from the scraper involved in the accident had only been painted once and that it had never been torqued.

 The pre-trial order " . . . controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. . . ." Section 21–1–1(16), N.M.S.A.1953 (Repl.Vol.4.) The broad discretion given to the trial judge in deciding whether to allow modification of the pre-trial order is well established. *Tobeck v. United Nuclear-Homestake Partners,* 85 N.M. 431, 512 P.2d 1267 (Ct.App.1973); *Cantrell v. Dendahl,* 83 N.M. 583, 494 P.2d 1400 (Ct.App.1972); *Laird v. Hudson Engineering Corporation,* 449 F.2d 216 (5th Cir. 1971); *Napolitano v. Compania Sud Americana De Vapores,* 421 F.2d 382 (2d Cir. 1970); *Heilig v. Studebaker Corporation,* 347 F.2d 686 (10th Cir. 1965). This court's commitment to pre-trial conferences and orders as a means of preventing surprise was recently demonstrated. *Beverly v. Conquistadores,* 88 N.M. 119, 537 P.2d 1015 (Ct.App.1975). The trial judge observed that had WABCO brought Mr. Kinsinger to trial, Springer would have discovered its reliance on a typographical error at trial, when it would presumably have been too late to take any

remedial action. The trial judge may have been influenced by the obvious prejudice to WABCO in being presented with new evidence and a new expert in the middle of trial. This case presents a sharp contrast to *Tobeck v. United Nuclear-Homestake Partners*, supra, in which this court *upheld* the trial court's exercise of discretion in allowing an expert witness to testify despite the pre-trial order. In *Tobeck* the opposing party received notice seventeen days prior to the trial. In addition, the expert there relied on the same data considered by the other experts, and his testimony did not change the theory of the case. Given the contrast between this case and *Tobeck*, it is not clear that the trial judge's discretion would have been upheld had he permitted Mr. Martin to testify. His refusal to permit this testimony did not constitute an abuse of discretion.

*Damages*

■ Springer's fourth point is that the damages the jury awarded were excessive and that a new trial, or remittitur should have been granted. The test for excessiveness of a verdict is:

" ' . . . (1) whether the evidence, viewed in the light most favorable to plaintiff, substantially supports the award and (2) whether there is an indication of passion, prejudice, partiality, sympathy, undue influence or a mistaken measure of damages on the part of the fact finder.' " *Sweitzer v. Sanchez,* 80 N.M. 408, 456 P.2d 882 (Ct.App.1969).

We will not recite the evidence. It was in part conflicting, but there was substantial evidence to support the verdict.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

SUTIN, J., concurs.

HENDLEY, J., concurs in part and dissents in part.

HENDLEY, Judge (concurring in part and dissenting in part).

I concur in the majority opinion except as to that part entitled "Springer's Expert Witness." Supreme Court Rule 16, § 21–1–1(16), N.M.S.A.1953 (Repl.Vol. 4, 1970) relating to pre-trial orders provides in part:

" . . . and such order when entered controls the subsequent course of the action, *unless modified at the trial to prevent manifest injustice.* . . ." (Emphasis added)

We are presented with the question of what is a manifest injustice. Would it be the fact that the report of WABCO's expert turned out to be different, i. e. "point" instead of "paint"? In the context of the case it cannot be said that this was minor. The theory of liability centered around the torquing of the bolts. Would it be the fact that the original bolts tested by the expert were no longer in existence so that Springer could have its own expert make his evaluation? There was testimony that torquing would leave a "point" mark on the bolt. Would it be the fact that plaintiff's counsel found one of the original bolts at the mine site which he promptly turned over to Springer just before the start of the trial. This was the only original bolt available for Springer to test. Would the cumulative effect of all of the foregoing create a manifest injustice?

The appellate review standard is abuse of discretion. *Tobeck v. United Nuclear-Homestake Partners*, 85 N.M. 431, 512 P.2d 1269 (Ct.App.1973).

This court in *Tobeck,* speaking to the spirit of Rule 16, stated:

" . . . The purpose of the federal rules of civil procedure was to get away from a 'sporting' theory of justice and to minimize the often fatal technicalities of common law pleading. We believe the pre-trial conference and the resulting pre-trial order must be examined in this light. In *Clark v. Pennsylvania R.R.,*

**50**

328 F.2d 591 (2d Cir. 1964), the court pointed out that:

'[I]t is a fundamental principle of pre-trial that his procedure be flexible, with power reserved to the trial judge to amend the order or permit a departure from strict adherence to the pre-trial statements of either party, when the interests of justice make such a course desirable. *Otherwise a pre-trial order or pre-trial statements would hold the parties in a vise,* and the result might be just about as bad as a return to the old sporting theory of justice . . . .' " (Emphasis added)

See generally 3 Moore's Federal Practice, para. 16.20 at 1136 (2d Ed. 1974) and cases cited therein.

Based on the foregoing, I would hold the trial court abused its discretion. I do not address the issue of how the trial court should have handled the practical aspects, as relates to WABCO, had it not have abused its discretion. I only state that speed is not the ultimate in every trial.