552 P.2d 1227

**Salvador HIGGINS, Plaintiff-Appellee,**

v.

**Frances M. HERMES, Defendant-Appellant.**

**No. 2292.**

Court of Appeals of New Mexico.

July 13, 1976.

Certiorari Denied Aug. 4, 1976.

**380**

Frank H. Allen, Jr., Modrall, Sperling, Roehl, Harris, & Sisk, Albuquerque, for appellant.

Pedro G. Rael, Zamora, Ribe & Rael, P. A., Santa Fe, for appellee.

## OPINION

LOPEZ, Judge.

The plaintiff brought suit for personal injuries suffered in an accident in San Miguel County. The accident occurred when the pickup truck in which the plaintiff was a passenger was hit by the defendant's car at an intersection. The jury returned a verdict favorable to the plaintiff. The defendant appeals the trial court's denial of her motion for a new trial, or in the alternative, a remittitur, and in addition asks this Court for a new trial based on errors occurring during the trial. We discuss the points relied on for reversal seriatim.

■■■ The defendant contends that reversible error was committed when the plaintiff's counsel intensively questioned a potential juror on voir dire about her employment with an insurance company and about her investments in insurance companies. The defendant argues that the questioning was overly lengthy and thus prejudicial to the defendant. No objection was made during the course of this testimony and therefore error was not preserved. *State v. James,* 76 N.M. 376, 415 P.2d 350 (1966); *State v. Harris,* 41 N.M. 426, 70 P.2d 757 (1937); *Candelaria v. Gutierrez,* 30 N.M. 195, 230 P. 436 (1924). Further, at plaintiff's request, the jury was instructed that insurance was not an issue in this case, which in this case was sufficient to cure any potential prejudice resulting from the questioning. *State v. Garcia,* 57 N.M. 665, 262 P.2d 323 (1953); *State v. Aull,* 78 N.M. 607, 435 P.2d 437 (1967).

■■■ The defendant asks for a new trial on the basis that the plaintiff's counsel's references throughout the trial to religious, ethnic, and geographical factors constituted an attempt to prejudice the jury by injecting irrelevant issues. See e. g., *Bulleri v. Chicago Transit Authority,* 41 Ill. App.2d 95, 190 N.E.2d 476 (1963); *Cooke-Teague Motor Co. v. Johnson,* 50 S.W.2d 399 (Tex.Civ.App.1932). The defendant notes that no objections were made to these comments, nor was the judge requested to caution the jury. As a matter of trial tactics, the prejudice resulting from an objection is argued to be potentially greater than that resulting from the offensive comments themselves, so that at least one court has held that an objection need not be made. *Smerke v. Office Equipment Co.,* 138 Tex. 236, 158 S.W.2d 302 (1941). But see, *Otis Elevator Company v. Wood,* 436 S.W.2d 324 (Tex.1968). In this case the allegedly improper comments occurred during the course of the entire trial. The trial court should have been alerted to the problem, and given an opportunity to admonish counsel if he deemed an admonishment necessary. It is true that the courts have indicated that improper remarks could be the basis for reversal even where no objection was made (*Griego v. Conwell,* 54 N.M. 287, 222 P.2d 606 (1950)), and the plain error rule would permit a similar result. We do not think the result in this case could be characterized as a "miscarriage of justice". *State v. Marquez,* 87 N.M. 57, 529 P.2d 283 (Ct.

App.1974). See, *Apodaca v. United States Fidelity and Guaranty Co.,* 78 N.M. 501, 433 P.2d 86 (1967).

In his third point the defendant contends that the trial court erred in permitting the testimony of Dr. John Salazar, a clinical psychologist. The basis of this objection was twofold: (1) that the complaint did not request compensation for psychological damages which must be specially pled (Rule 9(g), § 21–1–1(9)(g)), N.M.S.A.1953 (Repl.Vol. 4), and (2) that Dr. Salazar's testimony was based on out-of-court statements.

The damage paragraph in the complaint reads as follows:

"As a direct and proximate result of the negligent and grossly negligent acts of the Defendant, as aforesaid, the Plaintiff suffered permanent and disabling back injuries, suffered excruciating pain and agony which continues to this date and is expected to continue indefinitely, and loss of wages, all to his damage in the sum of $250,000.00."

Dr. Salazar described the plaintiff's state of mind, noting that the accident had produced depression, concern, and mental anguish. He then related this poor self-concept with a resulting psychological disability which would affect the plaintiff in many aspects of his life, including his ability to work successfully. Dr. Salazar evidenced a belief that the psychological damage could not be separated from the physical injury, so that any discussion of disability must take account of both factors.

It is not disputed that under New Mexico law damages can be recovered for mental pain and suffering as a consequence of physical injuries. *Rutledge v. Johnson,* 81 N.M. 217, 465 P.2d 274 (1970). The complaint asked recovery for "pain" and "agony", and the description the witness gave of the plaintiff's condition was encompassed by these terms. Under the concept "pain and suffering" recovery has been allowed for physical pain, nervousness, grief, anxiety, worry and shock. *Ca-pelouto v. Kaiser Foundation Hospitals,* 7 Cal.3d 889, 103 Cal.Rptr. 856, 500 P.2d 880 (1972). Even if the term "pain and agony" is not understood to refer to the mental conditions described by the witness, there is no necessity to specially plead these conditions. The test for whether these damages must be specially pled is derived from the necessity to alert the defendant as to what he must defend against. Thus "[g]eneral damages are such as naturally and necessarily flow from the wrong act, while special damages are such as naturally, but do not necessarily flow from it." *Mobile City Lines, Inc. v. Proctor,* 272 Ala. 217, 130 So.2d 388 (1961). Where physical injuries are pled, it is generally agreed that mental anguish will result. *Thacker v. Ward,* 263 N.C. 594, 140 S.E.2d 23 (1965); *Mobile City Lines, Inc. v. Proctor,* supra. See, 22 Am.Jur.2d, Damages § 283 (1965).

The doctor's testimony as to psychological disability did not go outside the pleadings. The pleadings contain an allegation of disability, and ask damages for the loss of earnings and wage earning capacity. Dr. Salazar explained the relation between the psychological damage incurred by the plaintiff and the ability to work. Thus, the contested testimony was relevant to the issue of disability and properly admitted.

The second issue raised is that the doctor assumed facts not in evidence in preparing his testimony. The doctor appears to have relied on medical reports prepared by other doctors. The objection that these reports were an impermissible basis for his opinion because they were not in evidence, is not, in itself, a sufficient objection. There was no objection that these reports were not of the sort reasonably relied on by such experts. Section 20–4–703, N.M.S.A.1953 (Repl.Vol. 4, Supp. 1975); *Herrera v. Springer Corporation,* 89 N.M. 45, 546 P.2d 1202 (Ct.App.1976).

The defendant argues that the trial court erred in permitting the plaintiff to

make a "per diem" argument to the jury. During closing argument, the plaintiff's attorney told the jury that he was not going to ask them to award the amount asked in his complaint, which was $250,000.00. Instead, he continued, he thought that at this stage of the trial, it appeared that $62,000.-00 would be a fair amount. He elaborated:

> "Now, this is a big figure. It sounds big. And I questioned you in detail concerning the figure and amount of money that is large. Here we have already passed from the date of the accident, January 24, 1974, to the date of his birthday, April 22, 1975—434 days. He is to live another 38.51 years and we're looking ahead at 13,935 days—I missed it, a total of 14,396 days."

The amount returned by the jury for the plaintiff was $62,000.00.

The defendant argues that this form of argument was an impermissible "per diem" argument. In the typical per diem argument, counsel specifies a daily, or even hourly, amount to compensate the plaintiff. The number of days the condition will continue is also supplied as is the final sum. The argument above differs from the traditional only in that the division was not done for the jury.

The New Mexico courts have never addressed the issue of whether per diem arguments should be allowed or prohibited. Of the state courts which have considered the issue the majority have concluded that per diem arguments should be allowed. *Beagle v. Vasold,* 65 Cal.2d 166, 53 Cal. Rptr. 129, 417 P.2d 673 (1966).

The landmark case presenting the arguments against per diem appeals is *Botta v. Brunner,* 26 N.J. 82, 138 A.2d 713, 60 A.L. R.2d 1331 (1958). The definitive exposition of the opposite view is found in *Beagle v. Vasold,* supra. The primary objection of the New Jersey Supreme Court to this form of argument appears to be that allowing an attorney to suggest a specific sum has the effect of permitting the attorney to testify, since there is no foundation in the evidence for a specific sum. We agree with the response of the California Supreme Court to this reasoning: the jury is permitted to infer a specific monetary sum from the evidence, because it is assumed that the evidence of the suffering and pain undergone by the plaintiff forms a sufficient foundation for the award of a specific monetary sum. The attorney, who traditionally discusses the inferences from the evidence, should not be restricted from comment on this inference. See, Comment, 60 Mich.L.Rev. 612, 621–624 (1962).

The second theory under which objections to per diem arguments are made is that juries tend to grasp at any definite sum which might be put before them, and that excessive verdicts can thereby result. This argument is given special force in this case where the jury does return a verdict for the exact amount requested by counsel. To our knowledge it is a common practice in New Mexico to inform juries of the amount sought by the plaintiff, which also has the effect of putting a definite sum before the jury. Indeed, the court in *Botta* in prohibiting the per diem argument took the theory to its logical extension by refusing to allow the jury to hear the total sum requested by the plaintiff. Secondly, we know of no real support for the theory that the per diem argument results in excessive verdicts, and prefer to control the evil of excessive verdicts by the normal processes of judicial review.

 In the fifth point the defendant argues that the verdict received by the defendant is excessive and should be put aside. The plaintiff suffered a 35% impairment to the body as a whole. He was 35%–40% occupationally disabled. Extensive evidence of pain and suffering was introduced. The evidence, viewed in the light most favorable to the plaintiff, substantially supports the award. *Sweitzer v. Sanchez,* 80 N.M. 408, 456 P.2d 882 (Ct.

App.1960); *Hughes v. Walker,* 78 N.M. 63, 428 P.2d 37 (1967).

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

SUTIN, J., specially concurring.

HERNANDEZ, J., dissenting.

SUTIN, Judge (specially concurring).

I concur in the result.

A. *Allegations of damage to the body and mind are general, not special, damages.*

The opinion does not meet the challenge of defendant. Defendant claims that Dr. Salazar's testimony on clinical psychology was inadmissible because the complaint did not allege psychological injuries as "special damage" pursuant to Rule 9(g) of the Rules of Civil Procedure. This issue is a matter of first impression in New Mexico.

The question for decision is: Under Rule 9(g) of the Rules of Civil Procedure, are psychological injuries "special damages" which must be alleged in the complaint? The answer is "No". Damage to the body and mind are general damages.

The opinion cites two cases which provide that, under the common law, it is unnecessary to specifically allege injuries. Reference is made to 22 Am.Jur.2d Damages § 283 (1965) and *Thacker v. Ward,* 263 N.C. 594, 140 S.E.2d 23 (1965). Under common law pleading, a complaint should disclose all the facts which the defendant must know in order to make his defense and thus prevent surprise at trial. These facts must disclose the character of the injury for which defendant must answer. In *Thacker,* the plaintiff alleged moribund injuries which included shock to the nervous system, and alleged "that as a direct result of these specific injuries plaintiff *has suffered excruciating physical pain and mental anguish.*" [Emphasis by Court]. The Court held that these allegations do *not* allow recovery for traumatic neurosis.

Times and rules have changed. Today, a claim for relief requires "(2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled." Rule 8(a) of the Rules of Civil Procedure. "When items of special damage are claimed, they shall be specifically stated." Rule 9(g). These rules are derived from the Federal Rules of Civil Procedure. All that is required, to indicate the simplicity and brevity of the claim for general and special damages, is set forth in Form 9, 28 U.S.C.A., Rule 84, p. 85.

3. As a result plaintiff was thrown down and had his leg broken and was otherwise injured, was prevented from transacting his business, suffered great pain of body and mind, *and incurred expenses for medical attention and hospitalization in the sum of one thousand dollars.* [Emphasis added].

"It is to be noted that the matter in italics is a statement of the special damage, and that there is no statement of general damage, other than a statement of the injury, for from this the law presumes general damages to follow." 2A Moore's Federal Practice § 9.08, p. 1976 (1975).

Rule 9(g) refers to *"Items* of special damage". [Emphasis added]. This means that when a plaintiff seeks recovery of a specific amount of damage, this item must be specifically stated. If a complaint falls below the minimum standard of Form 9, supra, a motion for a more definite statement can be filed. *Getzy v. Miller,* 9 F.R. D. 564 (D.Ohio 1949). If a defendant fails to use pretrial procedures to obtain an enumeration of special damages, it comes too late to seek relief during trial. *Great American Indemnity Company v. Brown,* 307 F.2d 306 (5th Cir. 1962).

B. *Objection to oral agrument was not preserved for review.*

When the alleged improper oral argument was made, the following occurred:

THE COURT: One second, Mr. Zamora. Would you approach the bench.

(A conference was held at the bench)

THE COURT: I will read your objection into the record. It is made as of now.

The objection made was not read into the record. Neither was the objection ruled on. This is a matter of first impression in New Mexico.

"Objections to arguments of counsel should be made in time for the trial court to rule on them and to correct them, where it is possible to correct them by a cautionary instruction before the jury retires." *McCauley v. Ray*, 80 N.M. 171, 178, 453 P.2d 192, 199 (1968). Counsel must state the reasons that oral argument is improper or prejudicial, and should request the judge to instruct the jury to disregard the improper argument. *Jackson v. Southwestern Public Service Company*, 66 N.M. 458, 349 P.2d 1029 (1960).

In the present case, defendant's attorney did object. But we believe the duty rests on the attorney to object in the presence of a court reporter, and obtain a ruling, or to request the court to file a certificate showing the objections made and the ruling thereon. To do otherwise creates a silence in the record that is not golden on appeal.

C. *Plaintiff did not make a per diem closing argument to the jury.*

Defendant contends that plaintiff made a per diem closing argument to the jury which is reversible error. Defendant mistakes the closing argument made. This argument arises out of U.J.I. 14.24 on the mortality tables. It reads:

According to a table of mortality the life expectancy of persons aged [33] years is [38.51] additional years. This figure is not conclusive. It is the average life expectancy of persons who have reached that age. This figure may be considered by you in connection with other evidence relating to the probable life expectancy of [plaintiff], including evidence of his occupation, health, habits and other activities, bearing in mind that

some persons live longer and some live shorter than the average.

This instruction leads to the per diem argument. Plaintiff argued:

From now, according to the Mortality Tables—and he may live longer, he might live less—he has got 14,396 days to live. From the date of the injury, we are talking of 14,396 days—14,396 days or over 344,000 hours, *half of those in pain*; 13,000 and more days of sleepless nights. Is $62,000.00 an unreasonable, unfair figure? It is not, spread over a period of 38 years. [Emphasis added].

It should be noted that plaintiff did not suggest a per diem or per hour valuation in money, nor limit the amount of recovery to pain and suffering. The sum of $62,000 covered both bodily injuries and pain. Plaintiff's closing argument did not fall within the "per diem" formula which has caused controversy in the courts. The formula arises when the attorney suggests to the jury: " 'Would fifty cents an hour for that kind of suffering be too high?' " *Botta v. Brunner*, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331, 1339 (1958). For a history of the per diem argument, see, Cooper, The Role of the Per Diem Argument in Personal Injury Suits, 5 Duquesne U.L. Rev. 393 (1966–67); 14 U.Fla.L.Rev. 189 (1961–62).

D. *Per diem closing arguments to the jury are guided by U.J.I.*

In personal injury cases, defendants are protected against plaintiff's closing argument by cautionary instructions given to the jury.

*First*, the trial court gave U.J.I. 17.7, entitled "Closing Arguments", as a guide to the jury "to protect the parties from prejudicial statements and remarks of counsel made during the course of trial." See Committee Comment. The instruction reads:

After these instructions on the law governing this case, the lawyers may make closing arguments or statements on the evidence and the law. These sum-

maries can be of considerable assistance to you in arriving at your decision and you should listen carefully. You may give them such weight as you think proper. However, neither these final discussions nor any other remarks or arguments of the attorneys made during the course of the trial are to be considered by you as evidence nor as correct statements of the law if contrary to the law given to you in these instructions.

This instruction was read to the jury and it was taken to the jury room. It told the jury that the formula argument is just that, *argument*, and no more. The damage instruction fixed the measure of damage. Closing argument did not. Per diem argument is not the ultima ratio argument in the case. Defense counsel can attack and destroy the per diem argument.

*Second*, the per diem argument, like the Golden Rule argument, is a sympathetic approach to the issue of damages. This method of approach is met by U.J.I. At the close of U.J.I. 14.2 on the measure of damage, the instruction reads:

Further, sympathy and prejudice for or against a party should not affect your verdict and is not a proper basis of determining damages.

Under U.J.I. 17.3, when the jury is instructed that they are the sole judges of the facts, it concludes:

Neither sympathy nor prejudice should influence your verdict.

"In personal injury litigation it is generally recognized that the jury favors the plaintiff from the outset of the case due to various reasons, the least of which is not sympathy." U.J.I. 14.1, Committee Comment. This is the reason why many cautionary instructions are given to instruct the jury to be impartial, "to ascertain the truth from the evidence in the case." U.J. I. 17.9.

In closing argument, lawyers are adequately protected by use of these instructions. There should be confidence in the ability of a juror to listen to closing arguments of lawyers when guided by cautionary instructions.

E. *Improper argument is not reversible error unless the award is extremely excessive.*

Improper closing argument is not reversible error unless the amount awarded is extremely excessive. We do not weigh the evidence. We determine excessiveness as a matter of law. *Baca v. Baca*, 81 N.M. 734, 472 P.2d 997 (Ct.App.1970) ; *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970) ; *Hanberry v. Fitzgerald*, 72 N.M. 383, 384 P.2d 256 (1963) ; *Vivian v. Atchison, Topeka and Santa Fe Railway Co.*, 69 N.M. 6, 363 P.2d 620 (1961). For a review of proper closing argument see, Gaudineer, Ethics: The Zealous Advocate. 24 Drake L.Rev. 79, 87–91 (1974).

Closing argument is an art, the study of a legal lifetime in the courtroom. In the presentation of the case, trial lawyers are actors. Simonett, The Trial as One of the Performing Arts, 52 A.B.A.J. 1145 (1966). See also, 24 Tenn.L.Rev. 539 (1955–67) ; Civil Trial Manual, p. 444 (1974). In closing argument, trial attorneys seek to persuade their peers. If argument is based on fact and reason, reversible error fades. If trial lawyers step outside the realm of fact and reason, improper argument can lead to failure before a jury, generally composed of the reasonable minds in the community.

In *Jackson v. Southwestern Public Service Company*, supra, the writer of this opinion made an improper closing argument on the "Golden Rule". This rule means that an attorney suggests to the jury men and women that they should place themselves in the position of a party in making a determination of the amount of damages to be awarded. The Court said:

It is not every inaccuracy or flight of oratory that will constitute error. *Considerable leeway is left to the trial judge in these matters.* [Emphasis added].

\* \* \* \* \* \*

It is a very difficult thing to determine whether or not an argument made by counsel in the heat of trial is reversible error or not. Some of the cases take the position that each situation must be judged on its own basis and under all the facts and circumstances of the case. [66 N.M. at 474–75, 349 P.2d at 1039–1040].

When we sit in judgment, we should not hold an award of damages excessive unless it "shocks the conscience of the court" or unless it "shocks our sense of justice." Otherwise, we cannot say that the trial court abused its discretion in upholding a verdict of the jury. This same rule should apply when the plaintiff claims the verdict of the jury is too low.

The amount of damages to be awarded is primarily a question for the jury and a jury verdict approved by the trial judge is entitled to great weight. Courts of review often overlook that venerable rule which should guide our judgment. In *Schofield v. Territory, ex rel., etc.,* 9 N.M. 526, 538–39, 56 P. 306, 313 (1899), the Court said:

.This cause comes before us to have errors occurring at the trial below corrected, and not for us to pass on the exact amount of the verdict given by the jury in determining the case. The judge in the court below who presided at the trial, and the jury, who saw and noted the manner and actions of the several witnesses while they were on the witness stand, could do that far better than an appellate court can do from simply reading the evidence taken. . . .

\* \* \* \* \* \*

. . . [I]f the judge who presided at the trial had thought that the verdict was not a proper one, and one which was warranted by the evidence adduced, he undoubtedly would have set it aside and have granted a new trial himself, even if the plaintiffs in error had not made the motion for such new trial. . . .

Another venerable rule that we should consider is the value of the American dollar today, not yesterday. The best illustration of this value is described by Justice Musmanno in *Layman v. Doernte,* 405 Pa. 355, 175 A.2d 530, 534 (1961). He wrote:

The appellant has cited various cases in which asserted high verdicts were reduced by this Court and the Superior Court. The mere height of a verdict, however, is in itself no evidence of excessiveness because height is always a matter of relativity. Even the Empire State Building in New York is but a toadstool when placed against the image of Mt. Everest. Thus, the $25,000 verdict in this case must be placed against the mountain peaks of inflation, as well as the hills of the years the plaintiff must climb before he reaches the climacteric of life. A verdict of $25,000 of today is certainly not equivalent to a verdict of that sum twenty years ago, much less is it like a similar verdict of thirty and forty years ago. (*Spangler v. Helm's New York-Pittsburgh Motor Express,* 396 Pa. 482, 153 A.2d 490.)

Nostalgic and sweet as may be the memory of the American dollar of 1940, 1930, and 1920, the inexorable fact remains that *that* dollar has gone forever. It would require a search of sea-diving or archaelogical intensity to find an article whose price has not doubled, tripled, or quadrupled during the last two or three decades. Hence, a comparison with verdicts of the past can only be meaningful if we assume in unrestrained fantasy that we can still purchase a five-cent ice cream cone, a five-cent hamburger, a five-cent shoe shine, a good five-cent cigar, a 35-cent haircut, a 15-cent shave, beef steak at 15 cents a pound, a good theatre seat for 50 cents, a seven-course dinner for a dollar, a pair of shoes for two dollars, and a 12-ounce glass of beer for a buffalo nickel, both buffalo and nickel having now, for practical purposes, almost disappeared. [Emphasis by Court].

Comparison of verdicts was abandoned long ago. "[T]he mere fact that a jury's award is possibly larger than the court would have given is not sufficient to disturb a verdict." *Hall v. Stiles,* 57 N.M. 281, 285, 258 P.2d 386, 389 (1953).

In the instant case, the closing argument was not improper and the verdict was not excessive.

HERNANDEZ, Judge (dissenting).

I respectfully dissent.

In my opinion defendant's third point of error is well taken. Rule 9(g) provides: "When items of special damage are claimed, they shall be specifically stated." As I read the fourth paragraph of plaintiff's complaint, it alleges general damages only. General damages are defined as those which are the natural consequence of the act complained of.

Dr. Salazar's single three-hour examination of the plaintiff disclosed an individual whose emotional stability was very delicate or percarious prior to the accident, by reason of his ethnic origin, the small rural community where he was born and reared, and the very inferior schooling which he received. Dr. Salazar concluded the physical injury plaintiff received has resulted in permanent damage to his psyche. He is now very apprehensive not only about his ability to compete in life but even to survive. Also, he now has grave misgivings about his virility.

Such results, in my opinion, are not the natural consequence of a minor traffic accident and in fairness to the defendant should have been pleaded with considerable particularity. I do not believe the letter that plaintiff's counsel sent to defendant's counsel advising him "Salvador Higgins will be examined by Dr. Salazar on June 26th.", takes the place of or constitutes compliance with Rule 9(g).