653 P.2d 891

**Joyce ROBINSON, Plaintiff-Appellee, Cross-Appellant,**

v.

**MEMORIAL GENERAL HOSPITAL, Defendant-Appellant, Cross-Appellee.**

**Nos. 5710, 5711.**

Court of Appeals of New Mexico.

Nov. 2, 1982.

J. Duke Thornton, Shaffer, Butt, Thornton & Baehr, Albuquerque, for defendant-appellant, cross-appellee.

Edward E. Triviz, Las Cruces, Steven E. Schonberg, Albuquerque, for plaintiff-appellee, cross-appellant.

## OPINION

WOOD, Judge.

Plaintiff, injured in an automobile accident, was a patient at defendant hospital. One of plaintiff's injuries was to her right hip. The hip was re-injured in the hospital. A jury found defendant liable for the re-injury. Defendant appeals and plaintiff cross-appeals. The five issues involve (1) a note from the jury; (2) the total amount of plaintiff's damages; (3) plaintiff's negli-

gence; (4) admission into evidence of a nursing policy manual; and (5) a supersedeas bond.

**Note from Jury**

Plaintiff's injury to her right hip, in the automobile accident, was a fracture through the neck of the femur. Surgery was promptly performed for the purpose of saving the ball of the hip joint. After this surgery, plaintiff had a "relatively high statistical chance of having a normal functioning hip the rest of her life", however, it would have been three to six months before plaintiff could have put any weight on the leg. After the surgery the chance of loss of the ball from avascular necrosis was approximately 25 percent. At the time of the re-injury it was too early to tell whether avascular necrosis would develop.

Because of the nature of the hip injury the surgeon had ordered that plaintiff be assisted in getting from one place to another and had instructed plaintiff not to put any weight on her right leg.

On January 3, 1979, the sixth day after this first hip surgery, a hospital auxiliary volunteer (Rader) came to plaintiff's room with a wheelchair and told plaintiff that she was to be taken for X-rays. According to plaintiff she thrice requested assistance in getting from the chair in which she was sitting into the wheelchair and Rader refused each request. According to plaintiff, after the first request, Rader said that she did not need any help; after the second request, Rader said " 'the therapy people told me that you could do it yourself;' " after the third request, Rader again stated that she did not need help.

Plaintiff then attempted to get into the wheelchair without assistance. "I got up and I was turning around. I got my house-slippers tangled up somehow and I lost my balance and I put my weight on my right leg." Plaintiff put weight on her right leg to avoid falling down. She immediately experienced terrible pain.

Three theories as to defendant's negligence were submitted to the jury; there is no claim that evidentiary support was lacking as to any theory. The theories were:

(a) the failure to provide care commensurate with plaintiff's needs, plaintiff's requests and the surgeon's order; (b) the failure to properly supervise and instruct attending personnel; and (c) the failure to provide adequate, competent and otherwise qualified personnel. By special verdict, the jury found that defendant was negligent; there was no general verdict.

Contemporaneous with the special verdict, a jury note stated:

The jury feels that the following statement should be stated for the record:

Despite the finding for the plaintiff, we feel that Mr. Rader should in no way feel responsible for our decision and should not feel responsible for the incident.

Richard H. Hiss
Foreman

Defendant moved for a judgment notwithstanding the verdict or, alternatively, for a new trial. It claims the trial court erred in denying the motions. Defendant asserts:

The jury has essentially determined that the plaintiff was injured as a result of a negligent transfer of the plaintiff from a chair to a wheelchair, however, the person performing the transfer was not negligent or his actions were not the proximate cause of the injury to the plaintiff. Such inconsistencies between the general verdict [special verdict] and the special findings [jury note] are irreconcilable, and thus, the general verdict cannot stand.

\*   \*   \*   \*   \*   \*

In the instant case, even assuming Henry Rader was performing function beyond the scope of his designated duties as a hospital auxillary volunteer, the hospital would only be liable if Henry Rader's actions were the proximate cause of the injury to the plaintiff. The jury's special finding has denied that Henry Rader was the proximate cause of the injury to the plaintiff.

Defendant's argument overlooks (a) the basis for the special verdict of negligence and (b) the meaning of proximate cause. The special verdict was based on defendant's failures: either a failure to provide the proper care, a failure to supervise or instruct personnel, or a failure to provide qualified personnel. An instruction defined proximate cause as "that which in a natural and continuous sequence produces the injury, and without which the injury would not have occurred." Proximate cause need not be the only cause, nor the last nor nearest cause. Defendant's failure or failures would be a sufficient proximate cause if the failure or failures, in combination with Rader's refusal to assist plaintiff into the wheelchair, caused the re-injury to the hip. See U.J.I. Civ. 3.8, N.M.S.A.1978 (1980 Repl. Pamph.), and the New Mexico decisions cited in the Committee Comment.

Considering the meaning of proximate cause, there is no inconsistency between the jury note that Rader was not responsible and the verdict that defendant was negligent. Rather, the note and the verdict were consistent. Defendant's failure or failures instituted the sequence which produced the injury; defendant's failure or failures were that without which the injury would not have occurred. Rader was not responsible for defendant's failure or failures.

The trial court did not err in denying defendant's motions.

## Total Amount of Plaintiff's Damages

■ The jury determined that plaintiff's total damages were $252,000.00. Defendant claims the amount is excessive, and relies on the test for excessiveness stated in *Gonzales v. General Motors Corporation*, 89 N.M. 474, 553 P.2d 1281 (Ct.App.1976). Defendant sought a remittitur of $127,000.00 in the trial court.

Defendant does not contend that an award for future medical expenses is prohibited, in this case, by § 41–5–7, N.M.S.A. 1978 (1982 Repl.Pamph.). It points out that testimony concerning present and future medical expenses supports an award slightly in excess of $15,000.00. Apart from this evidence, defendant asserts the damage amount is based primarily upon pain and suffering.

In argument to the jury, plaintiff suggested that a reasonable figure for the pain suffered by plaintiff would be $20.00 per day throughout her life expectancy. See *Higgins v. Hermes*, 89 N.M. 379, 552 P.2d 1227 (Ct.App.1976). Defendant did not object to this per diem argument at the time it was made; it first attacked the argument in post-verdict motions, which the trial court denied.

On appeal, defendant does not assert that the per diem argument, in itself, was error. The claim is that the per diem argument either caused an award based on a mistaken measure of damages, or an award based on prejudice and sympathy. One answer to this contention is that defendant had no objection to the argument which he asserts caused an excessive award. Objections to arguments of counsel should be made in time for the trial court to rule on them and correct them. *McCauley v. Ray*, 80 N.M. 171, 453 P.2d 192 (1968). That was not done. A second answer is that there is no indication in this record of an award based either on a mistaken measure of damages or on prejudice and sympathy. The record is to the contrary; substantial evidence supports the damage award.

The hip was re-injured when plaintiff put weight on her right leg in order not to fall. There was evidence of intensive pain at the time and throughout the night following the incident. There was evidence of pain medication up to the time of the second hip surgery on January 15, 1979. There was evidence of pain after this second surgery continuing up to the time of trial in February, 1982. There was evidence that a third hip surgery will be required in the future. The time of this future surgery is when plaintiff cannot stand her pain any more.

There is damage testimony quite apart from the continuing pain. The second hip surgery was performed because of the re-injury to the hip; the ball of the hip joint was replaced with a steel ball. This was

done on January 15, 1979. By December, 1981 the steel ball was rubbing against either cartilage or bone. In addition, this prosthesis had begun to wobble. The result of both items was increasing pain which, in turn, will result in the third hip surgery. This future surgery will be a total hip replacement.

Since the second surgery, plaintiff has had difficulties in walking and stooping. She has been unable to continue her outdoor activities—hunting, fishing and horseback riding. She has difficulties performing housework; she cannot carry clothes outside to hang them on the clothesline. Vacuuming is difficult because of the bending activities involved. She needs assistance in performing some of her duties at work.

The damage items on which the jury was instructed included present and future medical expense, pain and suffering, the aggravation of a pre-existing physical condition, and the nature, extent and duration of the injury. The evidence supporting each of the damage items is substantial and supports the jury's determination of the total amount of plaintiff's damage.

Defendant also seeks to have the amount of the total damages declared excessive by comparing the amount in this case with the amount of damages in other cases. Such a comparison is improper; the question of excessive damages must be determined from the evidence in this case. *Sweitzer v. Sanchez,* 80 N.M. 408, 456 P.2d 882 (Ct.App. 1969); *Maisel v. Wholesome Dairy, Inc.,* 79 N.M. 310, 442 P.2d 800 (Ct.App.1968).

Under the rules for deciding a claim of excessive damages, the award was not excessive. The trial court did not err in denying the motion for a remittitur.

### Plaintiff's Negligence

■ The special verdict determined that 75 percent of plaintiff's injury was caused by defendant's negligence, and that 25 percent of plaintiff's injury was caused by plaintiff's negligence. Plaintiff contends the evidence was insufficient to submit an issue as to her negligence to the jury. We disagree.

The jury was instructed that plaintiff had a duty to follow reasonable advice as to treatment and follow the directions given; that plaintiff also had the duty to use ordinary care for her own safety. No issue is raised as to the propriety of these instructions. *See* U.J.I. Civ. 11.10 and 16.4, N.M.S. A.1978 (1980 Repl.Pamph.). Plaintiff contends there was no factual issue concerning compliance with these duties, as a matter of law, because it was reasonable for plaintiff to rely on the expertise of hospital personnel; specifically, that she was entitled to rely on Rader.

Plaintiff had been instructed by her surgeon not to put any weight on her right leg. She was aware of these instructions; she had obtained assistance in moving about prior to the incident on January 3, 1979. She was also aware of the danger in attempting to move herself from the chair to the wheelchair. Despite this awareness she attempted to get into the wheelchair, unaided, after Rader refused assistance. She did not know Rader's exact position in the hospital, but did know he was neither a doctor nor a nurse. Plaintiff testified that "I felt that he was in authority and I was a patient and he knew what was best for me." Following the directions of a hospital attendant which were contrary to the instructions of the surgeon, raised a factual issue as to plaintiff's negligence; that issue was properly submitted to the jury. *See Westbrook v. Lea General Hospital,* 85 N.M. 191, 510 P.2d 515 (Ct.App.1973).

### Nursing Policy Manual

■ Plaintiff offered, and the trial court admitted over the Hospital's objection, an exhibit which recites that it was the Hospital's policy manual concerning nursing services. No claim is made that the contents of the manual were irrelevant under Evidence Rule 401, N.M.S.A.1978, if the manual was in effect. Nor is there any question as to the authenticity of the manual.

The Hospital contends the manual was improperly admitted because "it's dated after the incident." The trial court ruled that "if it was not in effect, then, that can be

brought out on cross examination." On appeal, the Hospital contends the exhibit "was improperly admitted since the document was not in force and effect at the time of the incident in question * * *." These arguments fail to consider the testimony of the hospital administrator and information concerning the dates.

Asked if the exhibit was "*the* section on nursing services" of the hospital manual, the hospital administrator, called by plaintiff as an adverse witness, answered only that he did not know if it was the "whole section". Asked if he was aware of any other sections concerning nursing services, the administrator answered that the exhibit "says here, 'Nursing Service.' I have to presume it is and it is dated 3–30–79." These answers permit the inference that the exhibit was the manual applicable on the re-injury date of January 3, 1979, even though it was dated March 30, 1979. In light of this testimony of the hospital administrator, the trial court could properly admit the exhibit, subject to a showing by the Hospital that the exhibit was not in effect on January 3, 1979.

The Hospital relies entirely on the date, March 30, 1979, in contending the exhibit was not in effect on January 3, 1979. The third page of the exhibit states that it was "reviewed and updated March 7, 1979". This statement is over the signatures of the director of nursing and the hospital administrator. This "review and update" was approved by the hospital administrator on March 30, 1979. There is no testimony explaining the meaning of "review and update," these words do not in themselves indicate changes in the manual, and there is no suggestion by the Hospital that changes were made when the manual was reviewed and updated. Although expressly informed by the trial court that the question of the effective date of the exhibit could be developed on cross-examination, the Hospital asked no questions of its administrator concerning the effective date of the manual. The record does not support the claim that the exhibit was not in effect on January 3, 1979.

**Supersedeas Bond**

Defendant sought a stay of execution on the judgment, without bond, because an appeal had been taken. This motion was denied and defendant filed a supersedeas bond. Defendant contends the trial court erred in denying the motion for stay.

We have no record of proceedings in connection with the motion for stay—only the motion and the bond. The motion relied on § 39–3–23, N.M.S.A.1978, which provides for a stay of the judgment, without bond, when the appeal is by "the state, a county or a municipal corporation * * *." *See also* R.Civ.Proc. 62(e), N.M.S.A.1978 (1980 Repl. Pamph.). The motion also relied upon an affidavit by the hospital administrator which stated that defendant "is a County-Municipal hospital organized pursuant to § 3–44–1, *et seq.*, N.M.S.A. (1978 Comp) * * [and] ... is governed by a Board of Trustees which consists of four trustees appointed by the County Commission of Dona Ana County and three trustees appointed by the City of Las Cruces." Section 3–44–5(B), N.M.S.A.1978. The deficiency in the affidavit is the failure to state either that the city-county organization operated the hospital or that it was not leased to some other entity. Section 3–44–3(A), N.M.S.A.1978.

In its reply brief, defendant argues that it is a state entity, but points out nothing supporting this argument.

The record is insufficient to show the trial court erred in denying the motion to stay the judgment without bond.

The judgment is affirmed. No appellate costs are awarded.

IT IS SO ORDERED.

DONNELLY and NEAL, JJ., concur.